# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 2, 2010

## STATE OF TENNESSEE v. MICHAEL FARMER AND ANTHONY CLARK

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-06635       John T. Fowlkes, Jr., Judge**

---

**Nos. W2009-02281-CCA-R3-CD and W2009-02283-CCA-R3-CD - Filed July 8, 2011**

---

The defendants, Michael Farmer and Anthony Clark, were convicted of especially aggravated robbery, a Class A felony, and aggravated robbery, a Class B felony. They were each sentenced to fifteen years for the especially aggravated robbery and to a concurrent eight years for aggravated robbery, for a total effective sentence of fifteen years. On appeal, both defendants claim that the evidence is insufficient to support their convictions, asserting that no evidence put forth at their trial established that they actually took money from either victim. Defendant Clark further claims that the straight, pass-through bullet wound inflicted on one victim's left thigh failed to pose a substantial enough risk of death to qualify as a serious bodily injury of the type necessary to sustain a conviction for especially aggravated robbery. Defendant Farmer further claims that the trial court erred by failing to sentence him as an especially mitigated offender. After carefully reviewing the defendants' arguments and the record evidence, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH, J., joined. JOSEPH M. TIPTON, P.J., filed an opinion concurring in part and dissenting in part.

Patrick Stegall, Memphis, Tennessee, for the appellant, Michael Farmer.

Robert Wilson Jones, District Public Defender, and Tony N. Brayton and Dianne Thackery, Assistant Public Defenders, for the appellant, Anthony Clark.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Theresa McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 7, 2008, a Shelby County grand jury issued an indictment charging the defendants with the especially aggravated robbery of Mr. Terrell Westbrooks and the aggravated robbery of Mr. Darnay Taper. Both defendants were tried before a jury from August 31-September 3, 2009. Viewing the evidence presented at their trial in the light most favorable to the State, as we must when reviewing appeals where the sufficiency of the evidence is at issue, *see State v. Dorantes*, No. M2007-01918-SC-R11-CD, 2011 Tenn. LEXIS 8, at *21 (Tenn. Jan. 25, 2011), the following events occurred on March 24, 2008.

Prompted by the suggestion of a friend, the victims, Terrell Westbrooks and Darnay Taper, went to the Summer Trace Apartments around noon to purchase the painkiller Lortab without a prescription. At the behest of a third party, Defendant Farmer met the victims at the door, led them to an empty apartment, and left them alone. Then, as the victims were waiting, both defendants suddenly burst into the room. Defendant Clark held a gun out and made an announcement to the effect that a robbery was to occur. One of the victims, Terrell Westbrooks, took several hundred dollars out of his pocket, threw it at the defendants, and ran from the apartment. Once outside the building, he looked down, saw a hole in his pants, and realized that he had been shot in the leg. The other victim, Mr. Taper, was grabbed by one of the men and hit in the head repeatedly. He then felt one of the men reach into his back pocket and remove more than three hundred dollars. Breaking free, Mr. Taper ran from the apartment–crashing headfirst into the wall opposite the apartment door–before escaping up a nearby staircase and through an exterior door to a small ditch, breaking his ankle in the process. After reuniting outside the apartment complex, the two victims called 911.

Officer Christopher Currie of the Memphis Police Department responded to the call and obtained a description of the subjects from another officer. Less than five minutes later, he discovered the defendants, covered in mud, sitting on a guardrail on the opposite side of a wooded area west of the apartment complex. He patted the defendants down and discovered a .32 caliber Smith & Wesson pistol, with four live rounds of ammunition in the six-round cylinder, on Defendant Clark.

Defendant Farmer was taken to the police station and, after being advised of his rights by Officer Roderick Robinson, confessed to robbing both victims. He asserted that the robbery had been intended as a drug deal and was committed at the instruction of an individual named Dillion, although Farmer admitted he had entered the apartment carrying a broken gun. Defendant Farmer claimed Mr. Taper had attempted to draw a weapon and that, in response, he had rushed Mr. Taper, taken away his gun, and used that weapon to fire shots at Mr. Westbrooks as the latter ran away.

At trial, in addition to the testimony of both victims and Officers Currie and Robinson, the State presented the testimony of Officer Terry Thompson, the first officer to arrive at the crime scene, who spoke with the victims and put out a description of the perpetrators; Officer Ernest Watts, who accompanied Officer Currie on the date of the robbery and was with him when the defendants were spotted sitting on the guardrail near the apartment complex; Officer Jeffrey Garey, who photographed the crime scene; Mr. George Dunlap a criminal investigator at the Shelby County District Attorney's Office, who transported evidence including a revolver and some shell fragments and casings; Special Agent Cervina Braswell of the Tennessee Bureau of Investigation, who tested the firearm given to her by Mr. Dunlap and found it to be operable; and Ms. Laura Waterbury, the Custodian of Medical Records at Baptist General Hospital, who authenticated the medical records pertaining to Mr. Westbrooks' treatment for his gunshot wound. The defendants presented no evidence.

After being duly instructed by the trial judge, the jury found both defendants guilty as charged on September 3, 2009. On October 15, 2009, the court sentenced both defendants to fifteen years as Range 1, violent offenders for Especially Aggravated Robbery, and to a concurrent eight years as Range I, standard offenders for Aggravated Robbery. These appeals followed.

Analysis

Both defendants claim that the evidence was insufficient to support their convictions for especially aggravated robbery. "When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Dorantes*, 2011 Tenn. LEXIS 8, at *21. Great weight is given to the result reached by the jury in a criminal trial; matters such as the credibility of witnesses, the weight given their testimony, and the proper resolution of any conflicts in the evidence are ordinarily left in their care. *Dorantes*, 2011 Tenn. LEXIS 8, at *21. Consequently, "on appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *Dorantes*, 2011 Tenn. LEXIS 8, at *21 (internal quotation omitted). In essence, a jury's verdict of guilt strips the defendant of the presumption of innocence and replaces it with a presumption of guilt that the defendant must strive to overcome on appeal. *See id.*

When weighing the sufficiency of the evidence, direct and circumstantial evidence must be treated the same, and the standard of appellate review is the same for both evidentiary types. *Id.* at **22-29. Even when a criminal offense has been proven exclusively through circumstantial evidence, the weight given that evidence, the inferences drawn from that evidence, and the extent to which all the circumstances are consistent with guilt are

primarily jury questions. *Id.* at *22. Under no circumstances may an appellate court "substitute its inferences for those drawn by the trier of fact," regardless of whether direct evidence exists or the case is wholly circumstantial. *Id.*

The defendants in this case were convicted of aggravated robbery and especially aggravated robbery. Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (2011). A robbery is aggravated if it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon," or if "the victim suffers serious bodily injury." T.C.A. § 39-13-402 (2011). A robbery is especially aggravated if it is both "[a]ccomplished with a deadly weapon" and "the victim suffers serious bodily injury." T.C.A. § 39-13-403.

The defendants challenge the sufficiency of the State's proof with respect to two particular elements. First, they claim that there is insufficient evidence that they committed any theft of property, thus undermining both convictions. Second, Defendant Clark argued that there is insufficient evidence that the victim shot in the leg, Mr. Westbrooks, suffered "serious bodily injury" within the meaning of the statute, thus undermining his conviction of especially aggravated robbery. A careful review of the record, however, convinces us that the evidence suffices to uphold each conviction.

With respect to the theft of property, the State presented the testimony of Mr. Westbrooks that he was robbed by two armed men, which he identified as the defendants. Mr. Westbrooks explained that when the men came into the room, he threw his money at them and ran away. Mr. Taper likewise testified that he was robbed by two men that he identified as the defendants, explaining that one of those men removed more than three hundred dollars from his back pocket as he fled the room. Finally, the State introduced Defendant Farmer's confession in which he admitted that he and his co-defendant had robbed Mr. Taper. His confession detailed how he entered the room armed with a weapon, took money and a revolver from the victims, and fired a gun at one of the victims.

The victims' testimony that the defendants forcibly removed money from their possession, combined with Defendant Farmer's confession to the same effect, more than suffices to support the jury's finding regarding the occurrence of thefts of property. Defendant Farmer seeks to avoid this conclusion by arguing that no one testified that either he or his co-defendant picked up Mr. Westbrook's money from the apartment floor, that Mr. Taper's testimony concerning the amount stolen from him conflicted with the amount he stated to police in an earlier police report, and that no money was found on either defendant when they were arrested by police. Defendant Clark makes similar arguments and points out the prosecution's failure to present physical evidence–such as fingerprints at the scene or

property recovered–tying the defendants to the crime. However, these types of arguments address the credibility of witnesses, weight of the evidence, and/or the inferences to be drawn from the evidence, which are matters left to the jury. Consequently, they do not provide any basis for relief.

The defendants also argue that their convictions for especially aggravated robbery must be reversed because the State failed to establish that Mr. Westbrooks suffered any "serious bodily injury" of the sort required for an especially aggravated robbery conviction under Section 403(a)(2). In Tennessee, "bodily injury" is defined as "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." T.C.A. § 39-11-106(a)(2) (2011). A bodily injury is serious if it involves, *inter alia*, "[a] substantial risk of death," "[e]xtreme physical pain," "[p]rotracted or obvious disfigurement," or "[p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." T.C.A. § 39-11-106(a)(34).

Defendant Clark argues that the State failed to prove that Mr. Westbrooks' gunshot wound met the statutory definition because the wound was described as a "straight, clean wound" and because he was discharged from the hospital later the same day with "just pain relievers." Defendant Clark further argues that there was no evidence that Mr. Westbrooks has had continuing problems with his leg or has required follow-up medical care. Defendant Farmer makes similar arguments, observing that Mr. Westbrooks was treated at a local hospital and released within an hour and that Mr. Westbooks did not testify at trial that the pain he felt from the gunshot was extreme. Defendant Farmer further argues that there was no testimony that the victim ever lost consciousness or suffered either disfigurement (such as a scar) or any permanent impairment in his leg. For these reasons, the defendants argue that the State's proof failed to meet any of the definitions of section 39-11-106(a)(34).

We disagree and hold that the evidence was sufficient for a rational jury to find that the victim suffered an injury that involved a "substantial risk of death" within the meaning of section 39-11-106(a)(34)(A). The defendants' arguments regarding the speed of Mr. Westbrook's treatment and the swiftness of his recovery reflect a misunderstanding of the requirements of this particular provision. A victim does not have to be placed on death's doorstep by a particular wound or set of wounds before his or her injury will be said to have involved a substantial risk of death. Such an understanding would effectively serve to conflate the requirements of section 39-11-106(a)(34)(A) with those of sections 39-11-106(a)(34)(B) *et seq.*, as the vast majority of wounds that cause their victims to virtually succumb to death will also involve extreme physical pain, protracted unconsciousness, protracted disfigurement, the substantial impairment of one or more bodily members, etc. By rendering in section 39-11-106(a)(34)(A) an entirely separate provision for wounds

involving a "substantial risk of death," the legislature must have intended to include within the definition of "serious bodily injury" a category of wounds that were not covered by the remaining provisions (*i.e.* wounds that do not include extreme physical pain or extended unconsciousness, disfigurement, or impairment), a category of wounds, we believe, such as the one suffered by Mr. Westbrooks.

Wounds that are not themselves life-threatening, but which were inflicted in a manner that necessarily involves a substantial risk of death, constitute serious bodily injury within the meaning of section 39-11-106(a)(34)(A). The medical records introduced by the prosecution in this case establish that the victim was shot with a bullet that passed completely through his left thigh, leaving an entry wound on his anterior thigh and an exit wound on his posterior thigh. Although this particular bullet passed through the victim's thigh without causing excessive bleeding, a pass-through bullet wound to this particular area could easily have punctured or severed the victim's femoral artery or vein, causing the victim to bleed to death. The fact that the bullet somehow traveled entirely through the victim's thigh while missing all of the vital blood vessels contained therein is a serendipitous turn of events for the victim, not the defendants. By shooting the victim through the thigh, they caused him a bodily injury that came within inches of being fatal–one that "involve[d] . . . [a] substantial risk of death." *See* T.C.A. §39-11-106(a)(34). "Serious bodily injury" as defined in section 39-11-106(a)(34)(A), and by extension a charge of especially aggravated robbery under section 39-13-403, requires no more.

Defendant Farmer also urges that the trial court erred in failing to sentence him as an especially mitigated offender, thereby reducing his effective sentence by eighteen months. In order to do so, the trial court would have to have found the presence of mitigating factors. Although two mitigating factors were proffered by Defendant Farmer–his youthful lack of judgment at the time of the offense and his post-offense attempts at self-rehabilitation–the trial court declined both. After review, we believe that the trial court properly imposed Defendant Farmer's sentence, and we decline this defendant's invitation to revisit the sentencing court's findings.

"The burden of demonstrating that a sentence is erroneous is [placed] upon the party appealing." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). So long as the trial court considered the proper sentencing principles and all relevant facts and circumstances when it imposed the sentence, this court will presume that the sentencing court's determinations are correct. *Id.* at 344-45. The "weighing of various mitigating and enhancing factors [is] left to the trial court's sound discretion." *Id.* at 345. If the findings of fact made by the sentencing court are adequately supported by the record, we will affirm the sentence imposed regardless of whether or not we agree with the result. *State v. Goodwin*, 143 S.W.3d 771, 783 (Tenn. 2004); *State v. Pike*, 978 S.W.3d 904, 926-27 (Tenn. 1998).

The trial court appears to have followed proper Sentencing Act procedure and applied all of the sentencing factors appropriately. The trial court found that Defendant Farmer made an insufficient showing of an age-related lack of judgment at the time of the crime, in light of the fact that he was fully nineteen years old and displayed considerable maturity by developing and implementing a relatively sophisticated robbery scheme. The trial court found Defendant Farmer's attempts at self-rehabilitation to be insufficient in light of the nature of the crime, including the injuries suffered by both victims during the robbery. The trial court heard the relevant evidence, considered all the applicable circumstances, and imposed a sentence that was permissible in light of the applicable sentencing law and the particular circumstances of the crime. As required by *Carter* and *Goodwin*, we must therefore decline Defendant Farmer's invitation to disturb the trial court's presumptively correct findings regarding the existence and applicability of his alleged mitigating factors on appeal.

Conclusion

Accordingly, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE