# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 20, 2014

## STATE OF TENNESSEE v. QUINISHA RENEE BRABSON

**Appeal from the Criminal Court for Hamilton County**
**No. 276805     Rebecca J. Stern, Judge**

_____

**No. E2013-02335-CCA-R3-CD-FILED-OCTOBER 29, 2014**

_____

The defendant, Quinisha Renee Brabson, was convicted after a jury trial of second degree murder, a Class A felony. On appeal, the defendant challenges the sufficiency of the evidence, asserting that the defendant should either have been acquitted as acting in self-defense or convicted only of the lesser-included offense of voluntary manslaughter. After a thorough review of the record, we conclude that the evidence was sufficient to support the verdict, and we accordingly affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed; Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J., and DAVID A. PATTERSON, SP.J., joined.

Donna Miller and Lorrie Miller (at trial) and Donna Miller (on appeal), Chattanooga, Tennessee, for the appellant, Quinisha Renee Brabson.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; William H. Cox, III, District Attorney General; and Brian Finlay and Matthew Rogers, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

# FACTUAL AND PROCEDURAL HISTORY

The homicide at issue occurred when the victim, Timmy Nichols, drove up to the defendant and her girlfriend at random on the street, intent on exchanging some pills in his possession for crack cocaine. The defendant, under disputed circumstances, ultimately shot the victim.

Lisa Greenlief, the victim's girlfriend and the only witness to the shooting to testify at trial, established that the victim was hoping to complete a drug transaction at the time of his death. Ms. Greenlief testified that she, the victim, and Jeff Young drove from Cleveland, Tennessee, into Chattanooga, hoping to exchange some prescription medication in the victim's possession for crack cocaine. Ms. Greenlief was in the passenger's seat, Mr. Young was in the back seat on the driver's side, and the victim was driving. Ms. Greenlief testified that it was around 7:30 or 8:00 p.m. on April 9, 2010, although other evidence established that the shooting occurred sometime after midnight on April 8, 2010. Ms. Greenlief testified that the victim pulled over onto a sidewalk where the defendant and several other people were standing. She stated she did not know how many people were there, but she also testified that there were five or six people and that "a bunch of young kids" were standing on the sidewalk. She testified that the victim spoke to the defendant to ask her to trade pills for crack but did not say anything threatening. The defendant and some girls were standing on the driver's side of the car. She testified that the victim was calm and merely held up the pill bottle.

Ms. Greenlief's testimony was that the defendant shot without provocation. She told the jury that the window was cracked and that the defendant walked up to it and fired, killing the victim. She was facing the victim head-on. Ms. Greenlief said that the defendant "pulled out a gun and she just rapidly shot him. I mean, head on, I mean just fired away without even thinking she shot him." She speculated the defendant knew the victim or thought he was an undercover police officer. Ms. Greenlief further testified, "She got like she was scared or something like that and he asked, you know, for the trade, the exchange[,] and she pulled out a gun and shot him from the driver's side." After having been shot, the victim drove away at fifty or sixty miles per hour and crashed into a telephone pole. Ms. Greenlief broke her leg in the accident, and the backseat passenger rolled down the window and ran away to avoid police. Ms. Greenlief gave police a description of the shooter as five feet, seven inches tall, with a medium[1] build and dark complexion, wearing a white shirt and black shorts.

Ms. Greenlief acknowledged a prior theft conviction and testified she was bipolar and on medication for her condition at the time. The defense impeached Ms. Greenlief with inconsistencies in her testimony and between her testimony and statements to the police as

---

[1] She also stated at trial that the shooter had a slender build. A photograph at the time of the defedant's arrest reveals that her build is not slender.

well as inconsistencies with the physical evidence. Although Ms. Greenlief testified at trial that the driver's window was cracked, she recalled telling Investigator Wenger that the window would not roll down. She also recalled telling Investigator Wenger that the bullet went through the driver's window, which shattered and sent pieces of glass all over her face, but she testified she was not in her "right mind" when she told him that. Photographs of the car showed that the driver's window was intact and rolled up. Ms. Greenlief recalled telling Investigator Wenger that the defendant was on the passenger's side of the car but testified at trial that she had been wrong. She did not recall saying the defendant walked around the hood of the car to the driver's window or saying that the defendant leaned inside the car and put her hands on the passenger's side window. She also denied being shown a photographic lineup.

The defendant was picked up by police about twelve blocks from the scene of the shooting. Officer Lauren Wenger testified the defendant was walking with two other people and was sweating excessively.[2] Officer Wenger had been looking for a heavy-set black woman wearing black shorts and a white T-shirt with her hair pulled back, and the defendant matched this description.

Investigator Michael Wenger was assigned to the case, and he interviewed the victim's two companions, the defendant's companions, and finally the defendant herself. The police were summoned at approximately 12:45 a.m. to the scene of the accident, and the defendant was detained at about 1:08 a.m. She signed a waiver of rights at 8:20 a.m., and her statement to Investigator Wenger was audio recorded and introduced into evidence at the trial.

The defendant's statement essentially asserts that she used the gun in an effort to protect herself and her girlfriend. She stated that she and her girlfriend were walking through a parking lot when a man drove up to them. The man turned the vehicle around to follow them and was trying to sell pills for a dollar. She described behavior she found threatening on the part of the victim, including the fact that he kept addressing her girlfriend on the passenger's side of the car instead of speaking with her on the driver's side and the fact that he kept asking how old her girlfriend was. The defendant told Investigator Wenger that the victim was cursing at her, saying, "I'm not talking to you, b*tch." She described the occupants of the car as drinking and "geeked up." She told Investigator Wenger that she thought the victim, whose eyes were red, was going to "get" them and specifically was afraid he was going to try to rape her girlfriend. The defendant described the victim as "flipping out," and she stated that before she shot, he opened his car door and made a motion as though to get out of the car. The defendant admitted pulling out the gun and firing it once, although

_____

[2] The record suggests that a third companion, a juvenile, was also brought in by police.

she stated she was aiming for the tires. She ran from the scene and dropped the gun by a house. She told Investigator Wenger that she had found the gun in the street earlier that night.

Investigator Wenger testified that the defendant took officers to the house where she said she dropped the gun, and no gun was recovered. The home's resident told him that she had seen two men and a woman in her back yard the night before, looking for something. He also testified that prior to the recording, the defendant had told him that the victim had a gun, but during the interview, she acknowledged that she did not see a gun.

The defense further impeached Ms. Greenlief's testimony when Investigator Wenger confirmed that she had told him a window shattered with the gunshot and when he testified that she was shown a photographic lineup of eight people and that she picked an individual who was not the defendant as the shooter. He confirmed that Mr. Young was intoxicated at the hospital.

Sergeant Heather Williams photographed the scene of the crime. She confirmed that none of the windows were shattered, although the windshield was broken in the crash. The driver's side window was not cracked but was rolled up, and police had not moved the window. The passenger's side window was down, and both back windows were partially down. Ms. Williams photographed and collected a bottle of prescription medication from the floor on the driver's side of the car. She also discovered a projectile in the passenger's seat. The driver's seatback and headrest had been removed from the vehicle by emergency personnel. She photographed what appeared to be the path of a projectile through the headrest. One hole was on the side of the headrest that would be facing the driver's side door; the other was on the front of the headrest where the driver's head would normally rest. The photographs show that the driver's side seatbelt was still buckled and had been cut to release the occupant.

The medical examiner, Dr. James Metcalfe, testified that the victim died of a gunshot wound to the back. The bullet entered his back near the left shoulder and exited at his right nipple, traveling slightly downward and severing the pulmonary artery. The victim's blood alcohol content was 0.03 percent, and he had a small amount of cocaine in his system. He was six feet, two inches tall.

At the close of the State's proof, the defendant moved for a judgment of acquittal on the charged offense, asserting that the State had not disproved adequate provocation and that the State had not established a knowing killing. Prior to the ruling, the defense attorney explained that she believed she had to "by law stand on the motion and not put on any proof if [the court] does not sustain the motion." The trial court denied the motion, concluding that the testimony of Ms. Greenlief could support a second degree murder conviction and that this

4

proof was enough to allow the jury to make the determination. The attorney for the defense then asserted that "that means that we cannot, that we would waive that motion by putting on proof."[3] Defense counsel asked for a moment to consult with the defendant, after which the defendant waived her right to testify. The jury convicted the defendant of second degree murder, and the trial court sentenced her to sixteen years' incarceration. On appeal, the defendant challenges the sufficiency of the evidence.

## ANALYSIS

This court must set aside a finding of guilt if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). When a court evaluates the sufficiency of the evidence, it must determine whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). This court will not reweigh or reevaluate the evidence, nor may it substitute its inferences drawn from circumstantial evidence for those of the trier of fact. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). The jury's guilty verdict, approved by the trial court, accredits the testimony of the State's witnesses and resolves all conflicts of evidence in the prosecution's favor. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *Id.* The State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that can be drawn from it. *Hall*, 8 S.W.3d at 599. "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002).

The defendant's brief argues that the State did not exclude every reasonable hypothesis except guilt. As the defendant was convicted based on direct and not circumstantial evidence, and as this is in any event no longer the standard for evaluating circumstantial evidence in Tennessee, this argument has no merit. *See State v. Wagner*, 382

---

[3] While defense counsel is technically correct that presenting proof after the denial of a motion for acquittal waives the issue, waiver of the motion for acquittal does not, of course, waive a subsequent challenge to the sufficiency of the evidence. *State v. Collier*, 411 S.W.3d 886, 893 (Tenn. 2013). Instead, if any evidence favorable to the State is introduced after the motion for acquittal is denied, this evidence can also be used in evaluating the sufficiency of the evidence and may bolster the State's case. *See Finch v. State*, 226 S.W.3d 307, 316-17 (Tenn. 2007).

S.W.3d 289, 297 (Tenn. 2012) ("Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt."). Citing the statutory provision regarding criminal attempt, the brief also inexplicably argues that the defendant's entire course of action was not corroborative of her intent to kill. *See* T.C.A. § 39-12-101(b). Of course, the defendant was not convicted of the attempted but of the completed crime, and this provision therefore has no application to the defendant's case. Finally, the defendant alleges that she should either have been acquitted as acting in defense of herself and others or convicted only of the lesser-included offense of voluntary manslaughter.

The defendant was convicted of second degree murder, which is a "knowing killing of another." T.C.A. § 39-13-210(a)(1)(2014). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b). Voluntary manslaughter is "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211(a). Self-defense is a justification which may be invoked when a person not engaged in unlawful activity and in a place where the person has a right to be threatens or uses force intended or likely to cause death or serious bodily injury. T.C.A. § 39-11-611(b)(2). Such force is justified when the person has a reasonable belief that there is an imminent danger of death or serious bodily injury; the danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and the belief of danger is founded upon reasonable grounds. T.C.A. § 39-11-611(b)(2)(A)-(C). The defense of another is justified under circumstances similar to those justifying self-defense. T.C.A. § 39-11-612.

Here, the defendant asserts that the proof established either self-defense, defense of a third person, or adequate provocation. She points to facts in the record which detract from the credibility of Ms. Greenlief's testimony. Ms. Greenlief acknowledged having told investigators that the driver's side window would not roll down and that the shooter had shattered it with the bullet, sending glass into Ms. Greenlief's face. She also recalled telling investigators that the defendant was initially on the passenger's side of the vehicle. This testimony was at odds with her testimony at trial that the window was cracked, that it did not shatter, and that the defendant was on the driver's side. It was also at odds with the physical evidence that the window was not broken or rolled down. Ms. Greenlief's testimony that the defendant shot the victim head-on was also inconsistent with the physical evidence showing that the bullet entered his upper back near the left shoulder and traveled at a downward angle to exit near his right nipple. Ms. Greenlief was incorrect about the time of the shooting and testified that it happened on a sidewalk rather than a parking lot. Ms. Greenlief also denied ever being shown a photographic lineup, although Investigator Wenger testified that she was shown one and chose a person other than the defendant as the shooter.

The defense also relies on Ms. Greenlief's testimony that the defendant was "scared or something like that." This testimony bolsters the defendant's version of events that she was afraid and shot out of fear. However, it does not resolve the question of whether the defendant acted in self-defense or as a result of adequate provocation. Self-defense also requires, among other things, a reasonable belief that there is an imminent danger of death or serious bodily injury, and a conviction for voluntary manslaughter would require the jury to find that the defendant acted in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner.

Ultimately, Ms. Greenlief's testimony was that the defendant, either recognizing the victim or mistaking him for someone, approached the vehicle and shot without warning or provocation. The jury was presented with two accounts of the events: that the defendant was pursued by the victim, who behaved aggressively and attempted to exit the car to assault her, or that the defendant was approached calmly by the victim and then shot without reason or provocation. Determining which version (if either) to believe and determining what constitutes adequate provocation are questions for the jury. *Bland*, 958 S.W.2d at 659; *State v. Johnson*, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995). Of course, the jury is free to accept some portions of a witness's testimony and to reject others. *State v. Adams*, 45 S.W.3d 46, 56 (Tenn. Crim. App. 2000). The credibility of Ms. Greenlief's testimony regarding the shooting itself was ultimately a jury question which we will not revisit on appeal. We conclude that, based on the evidence presented at trial, a rational finder of fact could have concluded that the homicide was the result of a knowing act rather than self-defense or adequate provocation producing a state of passion.

## CONCLUSION

Because the record contains evidence sufficient to sustain the jury's verdict, we conclude that the defendant is not entitled to relief on the sole issue raised, and we affirm the judgment of the trial court. The State correctly points out that the judgment form contains an error in that it indicates the defendant pled guilty, and we remand for correction of this form.

_____
JOHN EVERETT WILLIAMS, JUDGE

7