# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 2004 Session
Heard at Maryville[1]

## STATE OF TENNESSEE  v.  TRACY LORENZO GOODWIN, alias LAWANDA CARTER

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Hamilton County**
**Nos. 228289, 228290, 228291 & 228292      Hon. Stephen Bevil, Judge**

---

**No. E2001-01978-SC-R11-CD - Filed June 16, 2004**

---

This is an appeal from the Criminal Court for Hamilton County which convicted the defendant, Tracy Goodwin, of two counts of reckless aggravated assault, one count of felony reckless endangerment, and one count of criminally negligent homicide.  The issues before us are whether the evidence is sufficient to uphold the convictions, whether the trial court erred in failing to sever the aggravated assault charges from the reckless endangerment and criminally negligent homicide charges, whether the separate convictions for felony reckless endangerment and criminally negligent homicide violate the constitutional protection against double jeopardy, and whether the sentences were excessive.  We find that the evidence was insufficient to support the convictions for reckless aggravated assault because as defined by the statute, reckless aggravated assault requires proof of bodily injury, and no such proof was offered at trial.  We find sufficient evidence to support the remaining convictions of felony reckless endangerment and criminally negligent homicide.  We further find, with respect to the remaining convictions, that the trial court did not err in failing to sever the trials, the separate convictions do not violate double jeopardy protections, and the sentencing was not excessive.  Therefore, the decision of the Court of Criminal Appeals is reversed in part and affirmed in part.  We remand the case for a new trial on charges of assault as lesser-included offenses of aggravated assault.

**Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals is**
**Affirmed in Part and Reversed in Part and Remanded**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, Jr., and JANICE M. HOLDER, JJ., joined.

---

[1] This case was heard as part of the May 6, 2004, S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project in Maryville, Blount County, Tennessee.

A. Christian Lanier, III, Chattanooga, Tennessee, for the appellant, Tracy Lorenzo Goodwin.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General, for the appellee, State of Tennessee.


**OPINION**

**FACTUAL BACKGROUND**

On May 15, 1999, the defendant, Tracy Goodwin, drove uninvited to the home of Andrea Jackson and her brother Danny Jones at 908 Gillespie Road in Chattanooga. Mr. Jones was working on a car in the driveway, Ms. Jackson was working in the yard, and there were several children sitting on Ms. Jackson's car. When the defendant arrived, he and Ms. Jackson began to argue over a dog, which the defendant claimed belonged to his son and Ms. Jackson claimed belonged to her nephew. Mr. Jones talked briefly with the defendant and told the defendant to bring back ownership papers and that if the dog really did belong to the defendant, then Mr. Jones would give it to him.


The defendant returned a short time later with a short-barrel shotgun wrapped in a white towel. Ms. Jackson called 9-1-1. Mr. Jones testified that he took the gun from the defendant, proceeded to unload it, and returned it to the defendant. According to Mr. Jones, the defendant then re-loaded the gun and pointed it at Ms. Jackson and her dog, Felony, saying "I'll blow your f****** head off; I'll shoot you and your damn dog." At this point the police arrived, and the defendant ran around the back of the house and into the nearby woods. Although the police searched for the defendant for about an hour, they were unable to find him.

On May 28, 1999, Erica Tucker, age 9, who lived at 1004 Gillespie Road, and her cousin, Desiree Davis, age 10, decided to build a tree house in the backyard. Although they were told not to, the girls went into the woods that were behind the house. There, they found the shotgun that was later identified as belonging to the defendant. Erica testified that she and Desiree believed the gun to be a water gun. She also testified that the hammer had already been pulled back on the gun when it was found. Michael Hicks, Desiree's brother, approached the girls and attempted to take the gun from them. As the girls argued with him over the gun, Michael fell backwards onto the ground. When the gun hit the ground, it fired, hitting both Erica and Desiree. Desiree died of shotgun wounds to her head and chest. Erica sustained significant injuries as a result of approximately thirty shotgun pellets entering the left side of her brain. She was left with permanent injury to her leg as well as a memory deficit.

The defendant was charged with two counts of aggravated assault with a deadly weapon against Danny Jones and Andrea Jackson, one count of criminally negligent homicide of Desiree Davis, and one count of reckless endangerment. A jury found the defendant guilty of two counts of reckless aggravated assault as lesser-included offenses of aggravated assault; the jury also found the

defendant guilty of the other two counts. The trial court sentenced the defendant to two concurrent sentences of twelve years for the reckless aggravated assaults, and two concurrent sentences of six years each for the felony reckless endangerment and the criminally negligent homicide convictions. The concurrent sentences run consecutively for an effective sentence of eighteen years.

The Court of Criminal Appeals affirmed the convictions and the sentences.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues on appeal that the evidence is insufficient to support the convictions. The standard for appellate review when a criminal defendant challenges the sufficiency of the evidence is "whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002); see also Tenn. R. App. P. 13(e). When reviewing the evidence, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). Moreover, "this Court does not re-weigh or re-evaluate the evidence. Nor may this Court substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact." Reid, 91 S.W.3d at 277 (citation omitted).

#### A. Reckless Aggravated Assault

The defendant was charged with aggravated assault of both Ms. Jackson and Mr. Jones. As charged in the indictment, aggravated assault is committed when a person intentionally or knowingly causes another reasonably to fear imminent bodily injury while using or displaying a deadly weapon. See Tenn. Code Ann. §§ 39-13-101(a)(2), 102(a)(1)(B) (2003). The trial judge instructed the jury on reckless aggravated assault and assault as lesser-included offenses of aggravated assault. The jury chose to convict the defendant of two reckless aggravated assaults.

A person commits reckless aggravated assault when he or she "[r]ecklessly commits an assault as defined in § 39-13-101(a)(1), and: (A) [c]auses serious bodily injury to another; or (B) [u]ses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(2) (2003). Section 39-13-101(a)(1) defines assault as when a person "[i]ntentionally, knowingly or recklessly causes bodily injury to another." Thus, by the plain language defining the offense, reckless aggravated assault requires bodily injury.[2] As there is absolutely no proof in this case of bodily injury to either Ms. Jackson or Mr. Jones, the evidence is insufficient to support the defendant's two convictions for reckless aggravated assault.

---

[2] The trial court erroneously instructed the jury that "[f]or you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt . . . that the defendant recklessly caused a person to reasonably fear imminent bodily injury . . . [and] that the defendant used or displayed a deadly weapon."

The Court of Criminal Appeals concluded that bodily injury was not required for conviction because reckless aggravated assault is a lesser-included offense of aggravated assault as charged in the indictment.[3] However, reckless aggravated assault cannot be a lesser-included offense of aggravated assault based on knowingly or recklessly causing another to reasonably fear imminent bodily injury because, while the mens rea of recklessness may be a lesser mens rea of acting intentionally or knowingly, reckless aggravated assault requires an element that is not found in the charged offense – bodily injury.[4] Cf. State v. Rush, 50 S.W.3d 424, 429-30 (Tenn. 2001) (reckless aggravated assault is not a lesser-included offense of attempted second degree murder because the former offense requires proof of bodily injury); State v. Dominy, 6 S.W.3d 472, 477-78 (Tenn. 1999) (spousal rape is not a lesser-included offense of aggravated rape because spousal rape contains a statutory element not contained in aggravated rape, namely that the victim is the legal spouse of the defendant). Therefore, the Court of Criminal Appeals erred in holding that reckless aggravated assault was a lesser-included offense of aggravated assault and did not require proof of bodily injury.

Having found that the evidence is insufficient to support the defendant's convictions for reckless aggravated assault, we must remand the case for a new trial on charges of assault as a lesser-included offense of aggravated assault. When the trial court gave the jury instructions on the lesser-included offenses, it did so in a sequential manner, listing first the charged offense of aggravated assault, then reckless aggravated assault, and finally assault. By finding the defendant guilty of reckless aggravated assault, the jury never reached the issue of whether the defendant was guilty of assault. Thus, because he was never acquitted on the charges of assault, as he had been on the charges of aggravated assault, he may be retried on that lesser charge. See State v. Rush, 50 S.W.3d 424, 432 (Tenn. 2001); State v. Maupin, 859 S.W.2d 313, 317 (Tenn. 1993).

---

[3] An offense is a lesser-included offense of a charged offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

    (1) a different mental state indicating a lesser kind of culpability; and/or
    (2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

    (1) facilitation of the offense charged . . .; or
    (2) an attempt to commit the offense charged . . .; or
    (3) solicitation to commit the offense charged . . . .

State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999).

[4] Reckless aggravated assault is a lesser-included offense of aggravated assault if the aggravated assault was charged under Tennessee Code Annotated section 39-13-101(a)(1), intentionally or knowingly causing bodily injury to another.

## B. Reckless Endangerment

The defendant argues that the evidence is insufficient to support his felony reckless endangerment conviction because the fact that the children found the gun almost two weeks after he left it in the woods defeats the requirement that the danger of death or serious bodily injury be imminent. He contends that the unusual sequence of events in this case was so improbable that it could not be foreseen by a reasonable person.

Reckless endangerment is committed when a person "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a) (2003). While it is generally a Class A misdemeanor, it becomes a Class E felony when committed with a deadly weapon. Tenn. Code Ann. § 39-13-103(b) (2003).

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result with occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-302(c) (2003).

The evidence in this case establishes that the defendant left his shotgun, which he knew to be loaded and cocked, in woods that were a mere fifty feet behind the houses on Gillespie Road. At the time he left the gun, the defendant was fleeing from the police. While there were no children or other persons in the woods at that time, the defendant had seen children playing at the residence at 908 Gillespie Road and was aware of the close proximity of the woods to the houses.

The Court of Criminal Appeals held that "given the close proximity of the woods to the neighborhood, the defendant consciously disregarded the fact that leaving the gun in the woods may place people in imminent danger of death or serious bodily injury." The court concluded that a rational jury could have found that the defendant consciously disregarded a substantial and unjustifiable risk by leaving a cocked and loaded shotgun in woods adjacent to a neighborhood, where, in light of the gun's "precarious state," it posed a danger to anyone who happened upon it. We agree.

"[F]or the threat of death or serious bodily injury to be 'imminent,' the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger." State v. Payne, 7 S.W.3d 25, 28 (Tenn. 1999). This Court explained that the "zone of danger" is "that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." Id. Additionally, in

order to convict an accused of reckless endangerment, "the State must show that a person or class of persons were in an area in which a reasonable probability of danger existed." Id.

This case presents a unique circumstance in that the zone of danger created by the defendant continued beyond the time of his actual action. Most cases of reckless endangerment have involved instances of reckless driving, see, e.g., Payne, 7 S.W.3d 25, or discharging a firearm in the direction of another person, see, e.g., State v. Alder, 71 S.W.3d 299 (Tenn. Crim. App. 2001). In cases such as those, the danger is transitory – once the defendant's actions have terminated, so has the danger. The zone of danger, therefore, relates solely to the proximity of the victim to the danger. For example, reckless endangerment has been found where the victim was in the line of fire of the defendant and the person next to the victim was shot, see Alder, 71 S.W.3d at 304-05, but not found where the defendant merely fired his gun into the air or up into a tree top, see State v. Fox, 947 S.W.2d 865, 866 (Tenn. Crim. App. 1996).

Unlike the aforementioned cases, the zone of danger created by this defendant did not terminate when he left the gun in the woods. Instead, the action of the defendant created a lasting danger that continued for the entire time that the gun lay in the woods in its precarious state. Throughout this time, any person who came into that area was placed in imminent danger of death or serious bodily injury.

For these reasons, we agree with the Court of Criminal Appeals and conclude that a rational trier of fact could have found beyond a reasonable doubt that the defendant engaged in reckless conduct that placed others in imminent danger of death or serious bodily injury, and that the defendant knew or should have known that his actions created such a danger.

*C. Criminally Negligent Homicide*

The defendant also argues that the evidence is not sufficient to support his conviction for the criminally negligent homicide of Desiree Davis. First, he contends that the State did not prove that he should have been aware that his actions would create a substantial and unjustifiable risk because he dropped the gun in overgrown woods where he had never been before and where children were not expected to play. Second, he contends that his failure to perceive the risk did not constitute a gross deviation from the standard of care that an ordinary person would exercise under the circumstances because if he left the gun in the woods, he did so with the intent that it never be found. Finally, he contends that the girls' picking up the gun and Michael Hicks' trying to take it away from them was the proximate case of Desiree Davis's death, not his leaving it in the woods. The State argues that the evidence is sufficient because the defendant should have known that his leaving a cocked and loaded shotgun in the woods had the potential to injure or kill someone.

Criminally negligent homicide is defined as "[c]riminally negligent conduct which results in death." Tenn. Code Ann. § 39-13-212(a) (2003). For there to be criminal negligence, there must be "a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." Tenn. Code Ann. § 39-11-302(d)

(2003). Furthermore, "the accused must know, or should know, that his or her conduct, or the result of that conduct, will imperil the life of another given the circumstances that exist when the conduct takes place." State v. Adams, 916 S.W.2d 471, 474 (Tenn. Crim. App. 1995).

It is also necessary that in addition to being criminally negligent, the defendant's conduct be the proximate cause of the ensuing death. See State v. Farner, 66 S.W.3d 188, 199 (Tenn. 2001). In other words, the victim's death needs to be the natural and probable result of the defendant's unlawful conduct. Id. at 203. However, the defendant's actions "need not be the sole or immediate cause of the victim's death." Id. (citing Letner v. State, 299 S.W. 1049, 1051 (Tenn. 1927)). If the direct cause of the death is an act of the victim or third party, the defendant may still be liable if the act of the victim or third party is a natural and probable result of the defendant's conduct. See Letner, 299 S.W. at 1051 (upholding a conviction where the defendant shot into the river near a small boat which so frightened the deceased that he jumped overboard and was drowned); Cole v. State, 512 S.W.2d 598 (Tenn. Crim. App. 1974) (upholding a conviction of defendant who was drag-racing a second automobile and that second automobile collided with the victim's car, killing the victim).

It is a matter of common sense that guns, particularly loaded and cocked guns, ought to be kept safely out of the reach of young children. In this case, the defendant exercised extremely poor judgment in his handling of an inherently dangerous weapon. The defendant chose to leave his shotgun in woods that were a mere fifty feet behind a house in a crowded neighborhood. While there were not children in the woods at the time, the defendant had seen many children playing in Ms. Jackson's yard. And not only did he leave his loaded gun where it would be easily accessible to children, but he also left the weapon cocked. Sergeant Moody testified that to fire the shotgun, the hammer had to be pulled back and then the trigger pulled; he also testified that it took more force to pull back the hammer than it would to pull the trigger.

On these facts, a rational jury could have found that the defendant's actions constituted a "gross deviation from the standard of care that an ordinary person would exercise" and that he knew or should have known that his conduct or the result of that conduct would imperil the life on another.

Likewise, a rational jury could have found that the defendant's conduct was the proximate cause of death. The defendant set into motion the chain of events that led to the victim's death. The chain of events were not an extraordinary coincidence but rather a natural and probable consequence of the defendant's conduct. By leaving a loaded and cocked shotgun fifty feet from a house in a crowded neighborhood where children played, the defendant created an opportunity for a child to find the gun and use it in a manner likely to result in death or injury of themselves or another. For these reasons, we find that the evidence is sufficient to support the conviction for criminally negligent homicide.

## II. Severance of Offenses

Before trial, the state filed a motion to consolidate the defendant's four charges, and the

defense filed a motion to sever the two aggravated assault charges from the felony reckless endangerment and criminally negligent homicide charges. The defendant argued that the jury's sympathy for the children would prevent him from receiving a fair trial as to the aggravated assault charges. The state argued that the trial court should consolidate the cases for trial because the offenses were part of the same criminal transaction and because evidence about the shooting on May 28 would be admissible in the defendant's trial for the aggravated assaults committed on May 15. The trial court held that pursuant to Tennessee Rule of Criminal Procedure 8(a), it was required to join the offenses because they arose from the same criminal episode, and that pursuant to Tennessee Rule of Criminal Procedure 14 severance was not necessary because the jury could distinguish the May 15 offenses from the May 28 offenses. The Court of Criminal Appeals held that the trial court should have granted the defendant's motion to sever but that the error was harmless.

We do not need to reach the issue of whether the trial court committed reversible error by refusing the defendant's motion to sever because by vacating the convictions for reckless aggravated assault and remanding for a new trial on charges of assault, the defendant will be receiving the separate trial that he requested. However, on appeal to this Court, the defendant argues for the first time that the taint also flows from the aggravated assault charges to the felony reckless endangerment and criminally negligent homicide charges. He claims that "while some evidence would be required to place the defendant in the woods with a gun, the many details of the assault cases would not be necessary to present to a jury in order to establish the defendant's presence in the woods with a gun."

We review decisions concerning joinder and severance of offenses pursuant to Rules of Criminal Procedure 8(b) and 14(b)(1) for an abuse of discretion. Spicer v. State, 12 S.W.3d 438, 442 (Tenn. 2000). As such, a trial court's decision to consolidate or to sever offenses will not be reversed unless the "court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

Offenses based upon the same conduct or arising from the same criminal episode must be joined for the same trial. Tenn. R. Crim. P. 8(a). A severance of such offenses shall be granted before trial if it is deemed appropriate to promote a fair determination of the defendant's guilt or lack thereof or during trial if it is deemed necessary to achieve a fair determination. Tenn. R. Crim. P. 14(b)(2)(i), (ii).

As this Court has previously interpreted Rule 14, the "primary issue" to be considered in any severance case is whether evidence of one offense would be admissible in the trial of the other if the two offenses remained severed. See State v. Burchfield, 664 S.W.2d 284, 286 (Tenn. 1984). Therefore, we look to whether the evidence surrounding the May 15, 1999 incident between the defendant and Ms. Jackson and Mr. Jones would be admissible in a trial on the criminally negligent homicide and felony reckless endangerment charges.

In certain situations, the state may offer evidence of prior crimes, wrongs or acts that are relevant only to provide a contextual background for the case. See State v. Gilliland, 22 S.W.3d 266,

272 (Tenn. 2000). To do so,

> the state must establish, and the trial court must find, that (1) the absence of the evidence would create a chronological or conceptual void in the state's presentation of its case; (2) the void created by the absence of the evidence would likely result in significant jury confusion as to the material issues or evidence in the case; and (3) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

Id.

Applying this standard to the facts of this case, we conclude that the facts that led to the assault charges would have been admissible in a trial on the charges of felony reckless endangerment and criminally negligent homicide. The crimes of criminally negligent homicide and felony reckless endangerment require the finder of fact to determine whether the conduct of the defendant "constitutes a gross deviation from the standard of care that an ordinary person would exercise *under all the circumstances as viewed from the accused person's standpoint*." Tenn. Code Ann. §§ 39-11-302(c), (d) (2003) (emphasis added). Therefore, the absence of evidence of the surrounding circumstances would result in jury confusion as to material issues in the case. Certainly, in order to place the defendant in the woods with a gun, the state would be able to put on proof that there had been a previous altercation in the neighborhood during which the defendant was armed. Additionally, the state would be able to show that the police had been called and that when the police arrived, the defendant fled into the nearby woods.

The defendant fails to specify what other evidence regarding the incident on May 15, 1999, not outlined above, would have prejudiced the trial on the criminally negligent homicide and felony reckless endangerment charges. Therefore, we find that as far as the prejudice flowing from the assault charges to the other two charges is concerned, the trial court did not err in failing to sever the trials.

### III. Double Jeopardy

The defendant next claims that his convictions for felony reckless endangerment and criminally negligent homicide resulted from only one course of conduct and, therefore, only one of the convictions can be sustained.

The double jeopardy clauses of both the United States and Tennessee Constitutions provide that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const. amend. V; Tenn. Const. art. I, § 10. These clauses protect against a second prosecution for the same offense and against multiple punishments for the same offense. See Whalen v. United States, 445 U.S. 684, 688 (1980); State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996). In this case, we must determine whether convictions for criminally negligent homicide and felony reckless endangerment constitute multiple punishments for the "same offense."

In State v. Denton, we set forth the procedure for determining whether a defendant has received multiple punishments for the same offense. The reviewing court must consider: (1) the statutory elements of each offense; (2) the evidence used to prove the offense; (3) whether there were multiple victims or discrete acts; and (4) the purposes of the respective statutes. Denton, 938 S.W.2d at 381. No single aspect of this analysis is given controlling weight; each factor must be weighed and considered in relation to the others. See Cable v. Clemmons, 36 S.W.3d 39, 42 (Tenn. 2001).

The first component of Denton requires us to look at the statutory elements of criminal negligent homicide and felony reckless endangerment. This analysis is directed by the test articulated in Blockburger v. United States: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact that the other does not." 284 U.S. 299, 304 (1932); see also Denton, 938 S.W.2d at 379.

Criminally negligent homicide is defined as criminally negligent conduct which results in death, whereas felony reckless endangerment occurs when a person recklessly engages in conduct that places or may place another in imminent danger of death or serious bodily injury and uses a deadly weapon. Criminally negligent homicide requires a death, but felony reckless endangerment does not. Felony reckless endangerment requires use of a deadly weapon, but criminally negligent homicide does not. Thus each offense requires proof of an additional fact that the other does not.

Step two of the analysis was set forth in Duchac v. State:

> One test of identity of offenses is whether the same evidence is required to prove them. If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by statutes.

505 S.W.2d 237, 239 (Tenn. 1973) (quoting Am. Jur. 2d Criminal Law § 82).

In order to prove that the defendant committed criminally negligent homicide, the state had to show that a death resulted from the defendant's conduct. On the other hand, for the felony reckless endangerment conviction, the state has to show that an individual or class of individuals entered the zone of danger and that the defendant's conduct placed that person or persons in imminent danger of death or serious bodily injury. Additionally, the state has to show that the defendant used a deadly weapon. Because different evidence was needed to prove each offense, dual convictions would not violate the constitutional prohibitions against double jeopardy.

Step three looks to whether there were multiple victims or discrete acts. Denton, 938 S.W.2d at 381. While the defendant's leaving of the gun in the woods was a single act, there were at least two victims. The criminally negligent homicide indictment listed Desiree Davis. The indictment did not list a specific victim of the felony reckless endangerment, but from looking at the facts of the

-10-

case, the victim(s) of that charge was/were presumably Erica Tucker and/or Michael Hicks. Both of those children entered into the zone of danger and were endangered by the defendant's conduct. Thus step three is satisfied as there are different victims for each of the crimes.

Finally, step four looks at the purposes behind the two statutes. Denton, 938 S.W.2d at 381. While the purposes of the two statutes are similar in that they are both "offenses against persons," they are not identical. The purpose of the felony reckless endangerment statute is to deter reckless conduct which creates a risk of death or serious injury to third parties. Unlike reckless endangerment, criminally negligent homicide seeks to address a defendant's negligent conduct within the context of a homicide. The purpose is to deter criminally negligent conduct which leads to a death, even if such conduct does not rise to the level of reckless conduct, as the "reckless killing of another" is reserved for the offense of reckless homicide. See Tenn. Code Ann. § 39-13-215(a) (2003).

Considering the four factors, we find that the defendant's convictions for both felony reckless endangerment and criminally negligent homicide do not violate the principles of double jeopardy because the statutes are distinct, separate evidence is required to prove the offenses, and the offenses have separate victims.

## IV. Sentencing

The defendant appeals the length of his sentences, arguing that the effective sentence of eighteen years is excessive considering the facts of the case. Because of five prior felony convictions, the defendant is a Range III persistent offender. The trial judge sentenced him to the maximum sentence of twelve years for each of the reckless aggravated assault charges, to be served concurrently. He was sentenced to the maximum of six years for both the criminally negligent homicide and the felony reckless endangerment charges, to be served concurrently. The twelve and six years were to be served consecutively for a total sentence of eighteen years.

Because we have vacated the convictions for reckless aggravated assault and are remanding for a trial on assault, the only issue before us with regard to sentencing is whether the six-year sentences for felony reckless endangerment and criminally negligent homicide were excessive.

When a defendant challenges the length, range, or manner of sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35- 401(d) (2003); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." Ashby, 823 S.W.2d at 169. So long as the sentencing court followed the appropriate statutory procedure and imposed a lawful sentence after giving due consideration and proper weight to the factors and principles under law, and so long as the sentencing court's findings of facts are adequately supported by the record, then this Court may not modify the sentence, even if actually preferring a different result. State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998).

It is the defendant who bears "[t]he burden of showing that the sentence is improper." Ashby, 823 S.W.2d at 169. Despite the defendant's assertion of excessive sentences, his brief contains no authority or argument in support of the allegation.

Nevertheless, briefly looking at the record, it is clear that the trial judge properly followed the statutory procedure and considered all the relevant facts and circumstances. The defendant is a Range III offender based upon evidence of numerous prior convictions. The trial court noted that the defendant's presumptive sentence for the felony reckless endangerment and criminally negligent homicide convictions were four years, the minimum in the range for a Class E felony.

The trial court determined the fact that the defendant had a history of criminal behavior in addition to that necessary to establish the appropriate range was an enhancement factor that applied to both convictions. Additionally, the court applied the following enhancement factors to the felony reckless endangerment conviction: the injuries inflicted upon the victim were particularly great; the defendant had no hesitation about committing a crime when the risk to human life was high; and the crime was committed under circumstances in which the potential for bodily injury to the victim was great. As mitigating factors, the trial court found that the defendant committed the crimes under such unusual circumstances that it is unlikely he had a sustained intent to violate the law. The trial court then found that the enhancement factors outweighed the mitigating factors, and sentenced the defendant to the maximum in the range for both offenses, which is six years.

Because the trial court followed the proper sentencing procedures and its decision is supported by the evidence in the record, we find that the trial court's sentencing of the defendant was appropriate.

## CONCLUSION

In summary, we find that the evidence is not sufficient to support the conviction for reckless aggravated assault because there was no evidence of bodily injury. Because the jury never reached the issue of whether the defendant was guilty of the lesser-included offense of assault, we remand the case for a new trial on those charges. As for the defendant's remaining arguments, we uphold the decision of the Court of Criminal Appeals and find that there was sufficient evidence to support the convictions for felony reckless endangerment and criminally negligent homicide; the trial court did not err in failing to sever the offenses into two separate trials; the two convictions for felony reckless endangerment and criminally negligent homicide do not violate double jeopardy; and the sentences imposed for the felony reckless endangerment and criminally negligent homicide convictions were not excessive.

Costs of this appeal are assessed to the State of Tennessee.

_____
WILLIAM M. BARKER, JUSTICE