# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 12, 2016

## STATE OF TENNESSEE v. BRIAN ADAMS

**Appeal from the Criminal Court for Shelby County**
**No. 13-00657      John Wheeler Campbell, Judge**

———————————————————

**No. W2015-02066-CCA-R3-CD  -  Filed October 5, 2016**

———————————————————

A jury found that the Defendant, Brian Adams, was guilty of rape of a child, a Class A felony, and aggravated sexual battery, a Class B felony. The trial court sentenced the defendant to an effective sentence of ninety years. The Defendant asserts that his convictions should be overturned on the basis of insufficient evidence. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Stephen Bush, District Public Defender, and Tony N. Brayton (on appeal), Sanjeev Memula (at trial), and Will Muller (at trial), Assistant District Public Defenders, for the appellant, Brian Adams.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Katie Ratton and Abby Wallace, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

When the victim, J.M., was six years old, her mother moved the victim and her two brothers in with their grandmother. They lived there for about two to three months. While their mother was working, the children's grandmother would watch the children, including J.M. The Defendant, Brian Adams, was a friend of the victim's grandmother and would often visit.

J.M. testified that, after one of her nightly baths, the Defendant entered the bathroom where her grandmother had just finished bathing her. After her grandmother left the bathroom, the Defendant put J.M. on the bathroom sink and proceeded to touch and penetrate J.M.'s vagina with his hand. J.M. testified that the Defendant's actions were painful. J.M. testified that she told her grandmother immediately after what occurred in the bathroom and that her grandmother told her that she would tell J.M.'s mother.

On a separate occasion, the Defendant drove J.M., her brother, and her grandmother to a Cricket Wireless store. While J.M.'s grandmother and brother were in the store, the Defendant and J.M. remained behind in the vehicle. The Defendant then parked the vehicle on the side of the store. He exited the vehicle with J.M. and brought her to behind the store. The Defendant then pulled his pants down and put his "thingy" into her mouth. He kept it there until "he got done peeing." J.M. testified that the "pee" was "yellow" and "gooey." J.M. also testified that, after he was done "peeing," his "wiener" went down. They then heard her grandmother and brother exit the store. At the time of this incident, J.M.'s grandmother used several different types of walking assistants, including a scooter, a cane, and a walker. After this event, J.M. again told her grandmother about what occurred.

J.M. also testified that she discussed both of the above-mentioned incidents with several people over the course of about three years, including her mother, her father, her grandmother, staff at the Children's Advocacy Center ("CAC"), and staff at the District Attorney's Office.

J.M.'s mother testified that she believed J.M. began acting differently after moving out of her grandmother's house. Following an incident involving J.M.'s brothers not wearing their pants together in their shared bedroom, her father had a discussion with the boys about their actions. In response to the conversation, her father asked her mother to ask J.M. whether anyone touched her. Her mother asked her, and J.M. began to cry. She revealed to her mother that the Defendant touched her. Her mother was unaware of who the Defendant was at the time. Additionally, her mother testified that J.M. never before told her about these incidents.

Following J.M.'s revelation to her mother, J.M.'s mother took J.M. to the hospital and the CAC. At the hospital, Dr. Karen Lakin conducted a physical examination of J.M. and found no indication of injury to J.M. Dr. Lakin testified, however, that J.M. told her that she was touched by the Defendant. While at the CAC, Patricia Lewis, a forensic interviewer, recorded her interview with J.M. on video where they discussed the Defendant and how he touched her. Ms. Lewis testified that, in their interview, J.M.

identified the store not as a Cricket Wireless store but rather a grocery store. Further, Ms. Lewis testified that J.M. said she could hear her grandmother exiting the storefront, while she and the Defendant were behind the store. Ms. Lewis also testified that J.M. said she stood up, while the Defendant was on his knees and inserted his penis into her mouth.

J.M.'s grandmother testified for the Defendant. She testified that the Defendant was not allowed to be around J.M. or J.M.'s brothers when taking baths or changing. J.M.'s grandmother told the Defendant that it was her responsibility to take care of the children, not his. She further testified that she never took J.M. to the Cricket Wireless store, but did bring J.M. to the grocery store, along with the Defendant, and that she left them in the vehicle together. J.M.'s grandmother also testified that J.M. never told her of any incident of the Defendant touching J.M. She did admit, however, that her memory was "not so good." Likewise, J.M.'s mother testified that she believed that J.M.'s grandmother had serious memory issues, was not physically stable, and could not adequately care for herself without assistance. For instance, J.M.'s mother testified that J.M.'s grandmother believed that her husband passed away the day before her testimony in 2015, despite her husband actually passing in 2004.

## ANALYSIS

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). The appellate court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). Instead, this court affords the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences that may be drawn from that evidence. *State v. Elkins,* 102 S.W.3d 578, 581 (Tenn. 2003). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). The conviction replaces the presumption of innocence with a presumption of guilt, and the accused has the burden of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated section 39-13-522(a) defines rape of a child as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age."

-3-

Sexual penetration includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." T.C.A. § 39-13-501(7) (2013).

Aggravated sexual battery is unlawful sexual contact with a victim by the defendant where the victim is less than thirteen years of age. T.C.A. § 39-13-504(a)(4). "Sexual contact" is defined as including "the intentional touching of the victim's ... intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's ... intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). "'Intimate parts' includes semen, vaginal fluid, the primary genital area, groin, inner thigh, buttock or breast of a human being." *Id.* § 39-13-501(2).

The Defendant cites *Letner v. State* for the proposition that the victim's testimony was too full of inconsistencies and farfetched facts to support his convictions. *See Letner*, 512 S.W.2d 643, 649 (Tenn. Crim. App. 1974) ("[A]lthough as a general rule a conviction may rest upon the testimony of a single witness, though it be contradicted by others or appear uncertain or inconsistent, the rule does not apply if the testimony of such single witness is not of a cogent and conclusive nature, and 'if it is so indefinite, contradictory or unreliable that it would be unsafe to rest a conviction thereon.'" (quoting 23 C.J.S. Criminal Law § 903)). However, no corroboration of the victim's testimony is required. *State v. Collier*, 411 S.W.3d 886, 899 (Tenn. 2013). Further, the jury was made aware of the victim's accounts of the incidents and impeaching evidence, including the exact store where the rape took place and whether the victim and the Defendant could actually hear her grandmother exiting the store. Any inconsistencies were certainly not "'so improbable or unsatisfactory as to create a reasonable doubt of the [Defendant's] guilt.'" *State v. Elkins*, 102 S.W.3d 578, 583 (Tenn. 2003) (quoting *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999)).

Viewing the evidence in the light most favorable to the State, the Defendant has not carried his burden; the evidence is sufficient to support a jury finding that the Defendant raped the victim when she was six years old and committed aggravated sexual battery against the victim. Here, the victim testified Defendant touched the victim and inserted his hand into her vagina, while he was alone with her in a bathroom at her grandmother's house. Further, the victim testified that this hurt her. The victim also testified that, on a separate day, the Defendant penetrated the victim's mouth with his penis and ejaculated. The victim later reported these events to her grandmother, her mother, a physician, and a CAC forensic interviewer. Although the Defendant's witness, the victim's grandmother, denied allowing the Defendant near the victim during bath time and denied bringing the victim to the Cricket Wireless store, the jury was at liberty

to credit the testimony of the State's witnesses at trial.  After viewing the evidence in the light most favorable to the prosecution, the evidence is sufficient to satisfy the elements of his convictions beyond a reasonable doubt.

**CONCLUSION**

Based upon the foregoing reasons, we affirm the judgments of the trial court.


_____

JOHN EVERETT WILLIAMS, JUDGE