**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0316n.06

No. 08-6433

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 12, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| DELDRICK SUGGS, | ) | **M E M O R A N D U M** |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |

BEFORE: MARTIN, NORRIS, and COOK, Circuit Judges.

ALAN E. NORRIS, Circuit Judge. Defendant Deldrick Suggs appeals from the sixty-month sentence imposed by the district court after he pleaded guilty to being a felon in possession of a firearm, 18 U.S.C. § 922(g). On appeal, defendant contends that the district court should not have imposed a four-level enhancement to his base offense level for possession of a firearm in connection with another felony offense, U.S.S.G. § 2K2.1(b)(6), and that the sentence was unreasonable because the court did not adequately explain why it added three months to the advisory guidelines' range.

I.

Defendant has an extensive and violent criminal history, including a second-degree murder conviction for which he served more than twelve years in prison. While incarcerated, he committed a number of institutional violations, including possession of a deadly weapon and inciting riots.

After his release from prison, defendant began a relationship with Stacey Bougard, a woman whom he had dated in high school. On February 2, 2007, he stayed at her home along with her three children from another relationship. The children included two teenage boys, Tedrick and Tedarrius. According to testimony offered by Ms. Bougard at the sentencing hearing, she tried to wake defendant up for work at seven in the morning. He responded by cursing at her and she, in turn, told him to pack his things and leave the house. At that point Ms. Bougard recalled that he "started talking up in my face" and then "hit me on my right eye with a closed fist very hard." She went on to describe the altercation in these terms:

> We all got to tussling and fighting. Finally we came . . . around the bed and . . . got to fighting even more.
>
> One of the boys started hollering out, he's got a gun. He's got a gun. We started tussling with him even more until we could get him down. My oldest boy managed to put his knee or leg or something on his right hand until he got the gun up out of his hand. My youngest grabbed the gun and ran out of there. . . . My oldest boy was hitting him on top of the head with a glass bottle . . . .
>
> We tussled all the way around to the door where we managed to really get him down. I got good on top of his back, snatched a cord – phone cord out of the wall and wrapped it around his neck and held it real tight until we got him completely down. During the process, I made two phone calls [to] the police.

Sentencing Hearing Transcript at 20-21.

Eventually the police arrived, secured the firearm, a Talon Industries .380 caliber handgun, arrested defendant, and charged him with domestic assault. This assault charge was dropped when the instant federal charges against defendant were filed.

Tadarrius Bougard testified after his mother at the sentencing hearing. His recollection of the confrontation tracked his mother's version. In response to questioning from the district court,

he added that defendant cocked the handgun before the fight began. For his part, Tedrick Bougard testified that defendant "was going to shoot us if he had the opportunity."

Although the government conceded at the sentencing hearing that a three-level reduction to defendant's offense level for acceptance of responsibility was warranted, U.S.S.G. § 3E1.1, it urged the district court to impose a four-level enhancement to the base offense level because defendant possessed a firearm in connection with another felony offense. The guidelines section that authorizes this enhancement provides as follows:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by **4** levels. If the resulting offense level is less than level **18**, increase to level **18**.

U.S.S.G. § 2K2.1(b)(6).[1] According to the accompanying commentary, "'Another felony offense', for purposes of subsection (b)(6), means any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1, comment. (n.14(C)).

At sentencing, the government took the position that defendant's actions constituted reckless endangerment, which Tennessee law defines as follows: "A person commits an offense who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). When this offense is committed with a "deadly weapon," it is classified a Class E Felony. Tenn. Code Ann. § 39-13-103(b).

---

[1] The 2007 version of the sentencing guidelines was used in this case.

The district court ultimately adopted the government's position:

[T]he Court's ruling on the four-level enhancement, it's the Court's belief and the Court's finding that the enhancement is appropriate under the facts as described in this case. According to the testimony of the witnesses, not only did Mr. Suggs possess the weapon, but he cocked it . . . .

. . . [A]pparently Mr. Suggs cocked the weapon, which indicates an intent to use the weapon because it was loaded. . . . And then also it was the testimony of Mr. Tedrick Bougard that he believed that Mr. Suggs did intend to shoot someone if given the opportunity.

So under the provisions of 2K2.1(b)(6), the Court finds that a four-level enhancement is appropriate because it appears to the Court that Mr. Suggs displayed the firearm during the assault . . . and that it placed the victims – in this case three other individuals in imminent danger of death or serious bodily injury.

Sentencing Hearing Transcript at 47-48.

After the § 2K2.1(b)(6) enhancement and the § 3E1.1 reduction to the base offense level were applied, the resulting advisory guidelines range was between forty-six to fifty-seven months of incarceration.[2] The government contended at sentencing that defendant's criminal history was "riffed with violence" and that "[a]round 60 months would keep him out of the public and deterrence – and protecting at least the public." Sentencing Hearing Transcript at 56-57. Counsel for defendant argued for a sentence within the guidelines range. She conceded that defendant had "anger" issues for which he could use counseling but urged the court to consider her client's low IQ.

After hearing from counsel, the district court explained its sentencing rationale, and discussed the factors set out in 18 U.S.C. § 3553(a), which include the nature of the offense, the characteristics of the defendant, and the need to provide just punishment, adequate deterrence,

---

[2]Defendant had a criminal history of Category III, which is not in dispute.

protection of the public, and correctional treatment for the defendant. As for the nature and

circumstances of the offense, the court observed that the firearm was loaded and cocked. Given

these considerations, the court noted that "[w]e could have been dealing with a much worse

situation." Sentencing Hearing Transcript at 63. The court assessed defendant as someone prone

to "violent outbursts" who demonstrated an "inability to control his anger . . . since a very young

age." *Id.* at 64. After reciting all the § 3553(a) factors, the court pronounced the sentence:

> [T]he Court is going to sentence Mr. Suggs to 60 months of incarceration. It's the . . . belief of the Court that an upper [variance] is appropriate in this matter based upon the fact that Mr. Suggs has a history of violent offenses. Also it's the hope of the Court that Mr. Suggs will be able to receive some type of treatment while he is incarcerated in the Federal system.
>
> There are certainly opportunities available for Mr. Suggs to receive mental health treatment. . . or vocational training should be available as well as educational opportunities . . . .
>
> Also a concern and of importance to the Court is the deterrence [sic] effect in this matter. As I've indicated, Mr. Suggs, you have a long history of violence, and you're going to have to try to find a way to discontinue that behavior. My belief is that by sentencing you to a period of incarceration as I've indicated, that you may be able to avail yourself in some of these programs, and it certainly should be served as a deterrence to other persons who may consider employing the same means as you did in situations where there is an opportunity for violence and also when you're in possession of a firearm.

*Id.* at 65-66. In addition to sixty months of imprisonment, the district court sentenced defendant to

two years of supervised release.

**II.**

*1. Section 2K2.1(b)(6) Enhancement*

We review a challenge to a § 2K2.1(b)(6) enhancements in these terms:

> We accept the district court's factual findings unless clearly erroneous, *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005), and review de novo a district court's legal conclusions concerning the interpretation and application of the Guidelines, *United States v. Anthony*, 280 F.3d 694, 698 (6th Cir. 2002). Section 2K2.1(b)(6) instructs the court to increase a defendant's offense level by four "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." For this section to apply, the government must establish, by a preponderance of the evidence, *see United States v. Gates*, 461 F.3d 703, 707-08 (6th Cir. 2006); *United States v. Hardin*, 248 F.3d 489, 495 (6th Cir. 2001), a nexus between the firearm and an independent felony . . . . *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001).

*United States v. Burns*, 498 F.3d 578, 580 (6th Cir. 2007) (footnote omitted).

Defendant concedes that he possessed a firearm but argues that the district court erred because it based the enhancement upon the offense of domestic assault, which is a misdemeanor in Tennessee. Tenn. Code Ann. § 39-13-111. He points to the following comments by the district court at sentencing to support his position:

> So under the provisions of 2K2.1(b)(6), the Court finds that a four-level enhancement is appropriate because it appears to the Court that Mr. Suggs displayed the firearm during the assault – during the *domestic assault* that has been described earlier, and that it placed the victims – in this case the three other individuals in imminent danger of death or serious bodily injury.

Sentencing Hearing Transcript at 48 (emphasis added). In addition, defendant was charged with domestic assault after his arrest; that charge was not prosecuted after federal charges were filed.

Defense counsel appears to misunderstand the manner in which § 2K2.1(b)(6) is applied. It makes no difference what crime defendant was initially charged with, or whether he was convicted of that crime. U.S.S.G. § 2K2.1, comment. (n.14(C)) ("'Another felony offense', for purposes of

subsection (b)(6), means any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."); *see also United States v. Bullock*, 526 F.3d 312, 317-18 (6th Cir. 2008) (upholding the enhancement not based upon the original misdemeanor charge of terroristic threatening but on the uncharged federal felony). Thus the fact that defendant was initially charged with domestic assault, a misdemeanor, is not dispositive, nor does it matter that the district court referred to his conduct as a "domestic assault" when contemplating the four-level enhancement. Specifically, the court found that defendant possessed a loaded firearm, cocked it, assaulted Ms. Bougard while holding the firearm, and would have used it to hurt someone had it not been taken from him by her sons. That is enough to establish a connection between the firearm and reckless endangerment, Tenn. Code Ann. § 39-13-103, which is a Class E felony when a deadly weapon is used.

## *2. Was Defendant's Sentence Reasonable?*

Since *United States v. Booker*, 543 U.S. 220 (2005), this court has reviewed sentences for reasonableness under a deferential abuse-of-discretion standard. *United States v. Herrera-Zuniga*, 571 F.3d 568, 581 (6th Cir. 2009) (citing cases). Upward departures from the advisory guidelines range, i.e., variances, such as the one imposed in this case, are also reviewed for reasonableness. *Id.* To be procedurally reasonable, the district court must have properly calculated the advisory guidelines range, considered the sentencing factors listed in 18 U.S.C. § 3553(a) and the parties' arguments in support of a sentence outside of that range, and articulated a reason for the sentence imposed. *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). A sentence must also be substantively reasonable, which takes into account the totality of the circumstances, including the

extent of the variance from the guidelines range. *Id.* Sentences that deviate from the guidelines range are not afforded a presumption of reasonableness; however, neither are they presumptively unreasonable. *Id.*

Defendant's primary argument is that the district court did not adequately justify its decision to impose an upward variance of three months to his sentence. As quoted earlier, the district court considered the guidelines range and recited the sentencing factors before concluding that a sentence of sixty months of imprisonment was appropriate. Defendant contends that the district court's "failure to explain why the variance was necessary and how it related to a sentencing goal" is contrary to 18 U.S.C. § 3553(c)(2) (court shall state "specific reason for the imposition of a sentence" outside the guidelines range).

We disagree with defense counsel's characterization of the sentencing hearing. The district court heard from witnesses, considered the PSR, calculated the appropriate guidelines range, and reviewed the § 3553(a) sentencing factors. Specifically, the court relied upon defendant's extensive criminal history, his "anger management" problems, and the violence of his past crimes, including the one that triggered this prosecution. 18 U.S.C. § 3553(a)(1) (circumstances of offense and characteristics of the defendant). The court also factored in the need to deter such crimes, to promote respect for the law, and to protect the public. 18 U.S.C. § 3553(a)(2)(A)-(C). Finally, the court recognized that the defendant required the kinds of treatment that he could receive in federal prison. 18 U.S.C. § 3553(a)(2)(D). While a district court can always explain itself in more detail, in this case the district court provided more than the minimum explanation required to justify the sentence that it imposed.

**III.**

The judgment is **affirmed.**