FILED
03/06/2025
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 22, 2024 Session Heard at Cookeville[1]

## STATE OF TENNESSEE v. WILLIAM RIMMEL, III

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Marion County
No. 11136A  J. Curtis Smith, Judge**

_____

### No. M2022-00794-SC-R11-CD

_____

This appeal arises from a road-rage incident in Marion County involving the defendant, William Rimmel, III, and the victim, Bobbie Burke. While riding his motorcycle, Rimmel aggressively pursued Burke on the interstate and eventually broke the passenger window of Burke's car by pounding on it with the slide of a loaded handgun. Rimmel never fired the handgun or pointed it in Burke's direction, however, and Burke was unaware that the object used to break the window was a gun. A jury convicted Rimmel of attempted aggravated assault and felony reckless endangerment with a handgun. Rimmel challenges the sufficiency of the evidence for both convictions. Because we conclude that Rimmel intended to place Burke in reasonable fear of serious bodily injury by using his handgun and took a substantial step toward doing so, we affirm his conviction for attempted aggravated assault. But because the evidence does not establish that Rimmel's handgun-related conduct placed Burke in imminent danger of serious bodily injury or death, we reverse his conviction for felony reckless endangerment.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed in Part and Reversed in Part; Remanded to the Trial Court**

SARAH K. CAMPBELL, J., delivered the opinion of the Court, in which HOLLY KIRBY, C.J., JEFFREY S. BIVINS, ROGER A. PAGE, and DWIGHT E. TARWATER, JJ., joined.

Patrick Timothy McNally, Nashville, Tennessee, for the appellant, William Rimmel, III.

---

[1] Oral argument was heard in this case at Tennessee Technological University in Cookeville, Tennessee, as part of the Tennessee American Legion Boys State S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Gabriel Krimm, Assistant Solicitor General; and Joshua D. Minchin, Office of the Solicitor General Honors Fellow, for the appellee, State of Tennessee.

## OPINION

### I.

### A.

One Sunday afternoon in August 2018, Burke drove from Chattanooga, Tennessee, to Decatur, Alabama, to begin her shift as a civil engineer at Browns Ferry Nuclear Plant. Traffic was heavy as she traveled west on I-24 toward Nickajack Lake in her Honda Civic sedan. The speed limit was 65 miles per hour, but vehicles had slowed to around 50 miles per hour.

Soon after Burke passed the I-24 and I-59 interchange, a yellow Kawasaki Ninja motorcycle driven by Rimmel "shot up" between her car in the left lane and a car in the right lane. Rimmel was returning home to Murfreesboro after a weekend of whitewater rafting with his girlfriend, his friend Jerry Walter, and Walter's wife. Walter was driving a Harley-Davidson cruiser motorcycle, and Walter's wife and Rimmel's girlfriend were following in Rimmel's truck.

After Rimmel passed Burke and continued up the hill in the left lane, Burke merged into the right lane. Rimmel eventually dropped back so that he was behind Burke in the right lane. After checking her mirrors, Burke put on her turn signal and began to merge into the left lane. When Burke was about halfway into the lane, she heard Rimmel rev his engine, which prompted Burke to return to her original lane. Rimmel passed Burke in the left lane. After Rimmel went by, Burke merged into the left lane and passed the slower traffic in front of her before returning to the right lane.

Burke and Rimmel offered competing accounts of what happened next. According to Burke, Rimmel reduced his speed and began "motioning in an erratic manner" for her to pull over. Because Burke was alone and did not know what Rimmel wanted, she refused to stop. Rimmel then twice attempted to force her off the road and kicked her driver's side door. When Burke realized Rimmel was "out of control," she called 911.

Walter soon joined Rimmel's effort to force Burke off the road. The motorcyclists wove through traffic and tried to trap Burke by parking their bikes in a V-shape in front of her. Burke "had no idea what they would do" if they stopped her, so she kept driving. As she attempted to squeeze between the two motorcycles, Walter's bike scratched her driver's

side door. Eventually, Rimmel and Walter "revved up ahead and around" Burke and trapped her by forming a tighter V-formation. The three vehicles came to a complete stop, and Walter got off his motorcycle. Afraid of what he might do, Burke pressed the gas "to bump Rimmel's tire." But her car "got hung up on the back of his tire" and became stuck.

At that point, Rimmel "fully lost it[,] . . . revved up his motorcycle engine, and tore [up] the whole underside of [Burke's] car." He beat on the front of Burke's hood, threw his bike down, and began slamming her passenger-side window with his fist. Unable to break the window with his fist, he tried kicking the window instead. Then he started banging the window with a metal object he had pulled from his pocket. After finally breaking the window, he backed away and "started screaming profanities" at Burke, accusing her of trying to run him off the road. Burke was "scared to death" and thought Rimmel was going to shoot her or "[c]ome through the car" at her. She avoided eye contact with him and instead looked straight ahead and prayed. Burke remained on the phone with the 911 dispatcher throughout the incident.[2]

Rimmel told a different story. According to Rimmel, he first saw Burke's car as he attempted to pass her on the left. As he approached the rear of Burke's vehicle, she swerved into his lane. Rimmel revved his engine to warn her that he was there, but Burke "kept coming" and ran him off the road onto the shoulder. Rimmel continued driving. Once he was safely past Burke, he reduced his speed to wait for his friends, who were behind him. But he soon noticed Burke approaching from behind. Burke again swerved into his lane and this time her driver's side door hit his motorcycle. Rimmel used his foot to "push off" Burke's car to "keep from getting run over" and motioned several times for her to pull over. Eventually, Burke pulled over to the shoulder. As Rimmel made his way to the shoulder, she sped up, "PIT maneuvered the rear of [his] motorcycle, and pinned [his] leg to the rear." Rimmel no longer had control over his rear wheel, and his engine "revved up" even though he was not touching the gas.

As his motorcycle began to fall, Rimmel jumped off. He could hear Burke's engine revving, so he tried to stop her car. He punched her window a couple of times while wearing motorcycle gloves. When that didn't work, he pulled a loaded gun from his vest pocket and used the slide of the gun to break Burke's window. Rimmel denied pointing the barrel of the gun at the window. He also denied intending to hurt Burke or place her in fear. After breaking the window, Rimmel yelled, "[B]itch, you tried to kill me."

Law enforcement officials arrived soon after Rimmel broke Burke's car window. Rimmel told the officers that he had used his handgun to break Burke's window and that

---

[2] A recording of the 911 call was played for the jury.

the gun was in working order. Rimmel turned the handgun over to the officers. They confirmed that the gun was loaded and discovered that the slide no longer worked correctly. An officer who photographed the weapon did not recall seeing any damage to the barrel of the gun. Although Burke was aware that Rimmel used a metal object to break her window, she did not realize at the time that the object was a handgun.

B.

A Marion County grand jury returned a six-count indictment charging Rimmel with one count of aggravated assault; one count of reckless endangerment with a handgun; one count of reckless endangerment with a motorcycle; one count of false imprisonment; one count of vandalism over $2,500; and one count of burglary of an automobile. A jury trial was held, and Rimmel and Burke presented dueling accounts of the incident.

The jury convicted Rimmel of attempted aggravated assault, a class D felony; reckless endangerment with a handgun, a class E felony; and attempted reckless endangerment with a motorcycle, vandalism of $1,000 or less, and attempted burglary of an automobile, all class A misdemeanors. The court sentenced Rimmel to two years of probation for the attempted aggravated assault conviction; one year of probation for the reckless endangerment with a handgun conviction; and 11 months and 29 days of imprisonment for the three misdemeanor convictions, to be served concurrently. The terms of probation were to be served concurrently with each other but consecutively to the sentences of imprisonment. Rimmel moved for a new trial and judgment of acquittal. The trial court denied both motions.[3]

Rimmel appealed. As relevant here, Rimmel argued that the evidence was insufficient to sustain his convictions for attempted aggravated assault and reckless endangerment with a handgun. Rimmel maintained that the applicable aggravated assault statute requires proof that the defendant placed the victim in reasonable fear of imminent bodily injury *by using a deadly weapon*. According to Rimmel, Burke did not know that Rimmel had a gun and therefore could not have been placed in fear by his use of the gun. As for reckless endangerment, Rimmel contended that the State was required to prove that his actions created a "reasonable probability" that Burke would suffer serious bodily injury and that the evidence instead established only "a mere possibility" of danger.

---

[3] In response to Rimmel's motions, the State conceded that attempted reckless endangerment is not a crime in Tennessee. The trial court agreed and dismissed the attempted reckless endangerment conviction. The record on appeal did not include an amended judgment for that count, so the Court of Criminal Appeals remanded to the trial court for entry of a corrected judgment. *See State v. Rimmel*, No. M2022-00794-CCA-R3-CD, 2023 WL 3861429, at *3, *12 (Tenn. Crim. App. June 7, 2023), *perm. app. granted*, (Tenn. Nov. 20, 2023).

The State countered that Rimmel was convicted of *attempted* aggravated assault, so the evidence need only prove that his conduct was a substantial step toward a completed aggravated assault. The State asserted that smashing Burke's window with the handgun was a substantial step toward an aggravated assault with a deadly weapon. Regarding reckless endangerment, the State argued that Rimmel's conduct created a reasonable probability that his gun would discharge and strike Burke.

The Court of Criminal Appeals affirmed Rimmel's convictions in relevant part. *State v. Rimmel*, No. M2022-00794-CCA-R3-CD, 2023 WL 3861429, at *1 (Tenn. Crim. App. June 7, 2023), *perm. app. granted*, (Tenn. Nov. 20, 2023). The court held that "[a] rational juror could certainly have concluded that Defendant took a substantial step toward intentionally causing [Burke] to reasonably fear imminent bodily injury and that he used a deadly weapon in doing so." *Id.* at *5. Moreover, the court concluded that there was sufficient evidence to establish a reasonable probability that Rimmel's "loaded gun could have discharged when he used it to break the window of the vehicle occupied by [Burke], placing her within the zone of danger." *Id.* at *6.

We granted Rimmel's application for permission to appeal. *State v. Rimmel*, No. M2022-00794-SC-R11-CD, 2023 WL 8183977, at *1 (Tenn. Nov. 20, 2023).

II.

In this Court, Rimmel again challenges the sufficiency of the evidence supporting his convictions for attempted aggravated assault with a handgun and reckless endangerment with a handgun.

A sufficiency of the evidence challenge requires us to "determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Parker*, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A guilty verdict replaces the defendant's presumption of innocence with a presumption of guilt so that, on appeal, the defendant has the burden of proving that the evidence is insufficient to sustain his convictions. *State v. Carruthers*, 35 S.W.3d 516, 557–58 (Tenn. 2000). "The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). The State is entitled to "the strongest legitimate view of the evidence and any reasonable inferences that may be drawn from it." *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013) (quoting *State v. James*, 315 S.W.3d 440, 455 (Tenn. 2010)). And circumstantial evidence is sufficient to establish the elements of an offense. *See id.*

We consider the attempted aggravated assault conviction first and then turn to reckless endangerment. We hold that sufficient evidence supports the former but not the latter. We therefore affirm the conviction for attempted aggravated assault but reverse the conviction for reckless endangerment with a handgun.

A.

The first step in evaluating the sufficiency of the evidence is to identify the elements of the offense. *State v. Miller*, 638 S.W.3d 136, 158 (Tenn. 2021). To determine the elements of the offense of attempted aggravated assault, we examine both the aggravated assault statute and the attempt statute.

The aggravated assault statute sets out the elements of the offense in the alternative, so the elements the State must prove in a particular case depend on how the offense is charged. *See* Tenn. Code Ann. § 39-13-101 (2018) (listing alternative elements of assault); *id.* § 39-13-102 (2018) (providing that a person commits aggravated assault when he commits an assault as defined in section 39-13-101 and the assault meets certain other alternative criteria). Here, the State alleged that Rimmel committed assault by "[i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury," *id.* § 39-13-101(a)(2), and that this assault was aggravated because it "[i]nvolved the use or display of a deadly weapon," *id.* § 39-13-102(a)(1)(A)(iii). A "deadly weapon" includes a "firearm" or "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 39-11-106(a)(5) (2018).

Because Rimmel was convicted of *attempted* aggravated assault, we must also identify the elements of that lesser included offense. As relevant here, a person "commits criminal attempt" if, while "acting with the kind of culpability otherwise required for the offense," he "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." *Id.* § 39-12-101(a), (a)(3).

In *State v. Mateyko*, we explained that the attempt statute requires the State to prove three things. 53 S.W.3d 666, 673 (Tenn. 2001). First, "that the defendant intended to complete a course of action [or cause a result] that would constitute the offense, under the circumstances as the defendant believed them to be at the time." *Id.* Second, "that the defendant's actions constituted a substantial step toward the commission of the offense." *Id.* And third, "that the defendant acted 'with the kind of culpability otherwise required for the offense' with respect to the other elements of the attempted crime." *Id.* (quoting Tenn. Code Ann. § 39-12-101(a) (1997)).

First, the State must prove that the defendant intended to cause a result that would constitute the offense. The underlying assault conviction at issue here requires proof that the defendant "[i]ntentionally or knowingly *cause[d] another to reasonably fear imminent bodily injury*." Tenn. Code Ann. § 39-13-101(a)(2) (2018) (emphasis added). To prove attempted aggravated assault, then, the State must establish that Rimmel intended to cause Burke to reasonably fear imminent bodily injury. A person acts "intentionally . . . when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Id.* § 39-11-302(a) (2018).

The parties dispute whether, in a case alleging that the attempted aggravated assault involved the use of a deadly weapon, the State must additionally prove that the defendant intended to cause the victim's reasonable fear *by using a deadly weapon*. Rimmel argues that "a victim's reasonable fear of imminent bodily injury must be caused by a defendant's intended use or display of a deadly weapon." The State, by contrast, argues that a causal link between the use of a deadly weapon and the victim's fear is not required. It is enough, the State insists, that the weapon is "involved" in the assault, even if the weapon did not cause the victim's fear.

We need not resolve that dispute here. Instead, we assume for purposes of this opinion that Rimmel's interpretation is correct and that a defendant's use of a deadly weapon must cause the victim to reasonably fear imminent bodily injury. Because Rimmel was convicted of *attempted* aggravated assault with a deadly weapon, the proof must show that he intended to cause Burke to reasonably fear imminent bodily injury by using a deadly weapon.

The State must also prove that Rimmel took a "substantial step" toward the commission of an aggravated assault. *Id.* § 39-12-101(a)(3). Determining whether a defendant's conduct qualifies as a substantial step is "a heavily fact-intensive inquiry" that depends on "the specific circumstances shown in each individual case." *State v. Dickson*, 413 S.W.3d 735, 745 (Tenn. 2013) (quoting *State v. Davis*, 354 S.W.3d 718, 733 (Tenn. 2011)). Under certain circumstances, an act of "mere preparation" can constitute a substantial step. *See, e.g.*, *Davis*, 354 S.W.3d at 732 (citing *State v. Reeves*, 916 S.W.2d 909, 913 (Tenn. 1996)). For conduct to amount to a substantial step, "the person's entire course of action" must be "corroborative of the intent to commit the offense." Tenn. Code Ann. § 39-12-101(b). Assuming Rimmel is correct that the use of the deadly weapon must cause the victim's fear, the State was required to prove that Rimmel's entire course of action was corroborative of the intent to cause Burke to reasonably fear imminent bodily injury by using a deadly weapon.

Finally, the State must prove "that the defendant acted 'with the kind of culpability otherwise required for the offense' with respect to the other elements of the attempted

crime." *Mateyko¸* 53 S.W.3d at 673 (quoting Tenn. Code Ann. § 39-12-101(a) (1997)). Here, however, because we are assuming that the defendant's use of a deadly weapon is part of the conduct or results that constitute the offense of aggravated assault, no "other elements" of aggravated assault are at issue.

To sum up, we assume—solely for purposes of this opinion—that the defendant's use of a deadly weapon must cause the victim to reasonably fear imminent bodily injury. Based on that assumption, to convict Rimmel of attempted aggravated assault, the State was required to prove beyond a reasonable doubt that: (1) Rimmel intended to place Burke in reasonable fear of imminent bodily injury by using a handgun; and (2) Rimmel took a substantial step toward the commission of that offense.

Rimmel argues that the evidence was insufficient to convict him of attempted aggravated assault because the State did not prove that Burke knew the object that broke her window was a handgun. Rimmel reasons that, because Burke was not aware that he had a handgun, any fear she experienced was not caused by the handgun.

Rimmel's argument misses the mark. Even assuming that a causal link is required between the deadly weapon and the victim's fear, the evidence was sufficient to support Rimmel's conviction for *attempted* aggravated assault.

First, a rational juror could have concluded that Rimmel intended to cause Burke to reasonably fear imminent bodily injury by use of a deadly weapon. Viewed in the light most favorable to the State, the evidence shows a course of conduct designed to terrify Burke that culminated in his use of the handgun to break Burke's window. After Burke's initial encounter with Rimmel, he motioned erratically for her to pull over, repeatedly attempted to run her off the road, and eventually trapped her on the shoulder of the interstate. Once Burke was stopped, Rimmel tried to break her passenger window by punching and kicking it. When that approach was unsuccessful, he pulled out a loaded handgun and slammed the slide against the window until it shattered the glass. With the window no longer in his way, he unleashed profanities at her. Based on this course of conduct, including Rimmel's use of a deadly weapon, a rational juror could have fairly concluded that Rimmel intended to cause Burke to fear imminent injury. *See State v. Lyons*, 669 S.W.3d 775, 787 (Tenn. 2023) (noting that intent can be inferred from a defendant's course of conduct). Although Rimmel testified that he "did not" intend to place Burke in fear by busting out her window with his loaded handgun, the jury was free to discredit his testimony. *See Dorantes*, 331 S.W.3d at 379 ("reconcil[ing] . . . conflicts in the proof" is a matter for the trier of fact (quoting *Campbell*, 245 S.W.3d at 335)).

Second, a rational juror could have concluded that Rimmel took a substantial step toward causing Burke to fear imminent bodily injury by using a handgun. Whether conduct

constitutes a substantial step is a fact-intensive inquiry driven by the circumstances in each case. *Dickson*, 413 S.W.3d at 745. But the conduct at issue here constitutes a substantial step under any measure. After aggressively pursuing Burke on the interstate and forcing her off the road, he retrieved a loaded handgun from his vest pocket and repeatedly slammed the slide of the gun against Burke's passenger window until the window broke. These actions constitute a substantial step toward aggravated assault, even if Burke was unaware that the object Rimmel pulled from his pocket was a gun.

Assuming that aggravated assault with a deadly weapon requires a causal link between the use of the deadly weapon and the victim's fear, we conclude that the evidence here was sufficient to sustain Rimmel's conviction for attempted aggravated assault.

B.

Rimmel also challenges the sufficiency of the evidence for his reckless endangerment conviction. Rimmel contends that the State failed to prove beyond a reasonable doubt that he engaged in conduct with his handgun that placed Burke in imminent danger of death or serious bodily injury.

"Reckless endangerment" is defined as "recklessly engag[ing] in conduct that places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a) (2018). A defendant acts "recklessly" when he is aware that his conduct or its consequences will create "a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 39-11-106(a)(31). The term "[s]erious bodily injury" means bodily injury involving "(A) [a] substantial risk of death; (B) [p]rotracted unconsciousness; (C) [e]xtreme physical pain; (D) [p]rotracted or obvious disfigurement; [or] (E) [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." *Id.* § 39-11-106(a)(34). Reckless endangerment ordinarily is a Class A misdemeanor. *Id.* § 39-13-103(b)(1). But it becomes a Class E felony when it is "committed with a deadly weapon." *Id.* § 39-13-103(b)(2).

Rimmel contends that the State failed to prove that his conduct involving the handgun placed Burke in "imminent danger." He cites our decision in *State v. Payne*, to support this contention. 7 S.W.3d 25 (1999). In *Payne*, we considered whether "the offense of reckless endangerment can be committed against the public at large." *Id.* at 27. In answering that question, we examined the meaning of "imminent" in the phrase "imminent danger of death or serious bodily injury." *Id.* at 27–28. Quoting *Black's Law Dictionary*, we explained that "imminent" means "[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous. Something which is threatening to happen at once, something close at hand, something to happen upon the instant, close although not yet touching, and on the point of

happening." *Id.* at 28 (quoting *Imminent*, Black's Law Dictionary 750 (6th ed. 1990)). Based on that definition, we concluded that "for the threat of death or serious bodily injury to be 'imminent,' the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger." *Id.* We held that the State may indict a defendant for committing reckless endangerment against the public at large if that term refers to the "class of persons occupying the 'zone of danger'"—that is, the class of people present in the area where "a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury." *Id.*

Rimmel argues that the State failed to establish the "imminent risk" element of reckless endangerment because no rational juror could conclude that his conduct made it reasonably probable that Burke would be killed or seriously injured. Rimmel notes that there was no evidence that the gun was ever pointed at Burke, and he contends that his use of the slide of his gun to break her window at most created a *mere possibility* of danger. Moreover, Rimmel alleges that *Payne*'s "reasonable probability" standard requires the State to prove mathematical probability: that it was "more likely than not" that Rimmel's conduct would cause his gun to fire and strike Burke. And he suggests that the State's failure to offer "a firearms expert to opine that the use of the pistol . . . was likely to cause a discharge in [Burke's] direction" left the jury to "speculate how endangered [Burke] may have been" and that the evidence therefore is "insufficient" to sustain Rimmel's conviction.

The State urges a more expansive reading of the reckless endangerment statute. The State maintains that the reckless endangerment statute does not "include, or even imply, an extent-of-risk requirement." The State also accuses Rimmel of overreading *Payne*. According to the State, *Payne* stands only for the proposition that the State must prove a *specific person* was placed in danger. Finally, the State asserts that it was not required to employ expert testimony to establish that Rimmel's actions created a reasonably probable threat of harm. The State instead would allow the jury to exercise its "common sense" to determine whether Rimmel's conduct sufficiently endangered Burke.

Rimmel has the better understanding of *Payne*. Under *Payne*, an injury is not imminent unless there is a "reasonable probability" that it will occur. 7 S.W.3d at 28. Although we reached that conclusion in a case about whether reckless endangerment may be committed against the public at large, our interpretation of the term "imminent" was not limited to that context. To the contrary, we held that, a reckless endangerment conviction requires proof that the defendant's conduct created "a reasonable probability of danger as opposed to a mere possibility of danger." *Id.* This understanding aligns with the ordinary meaning of "imminent," which encompasses both temporal proximity and likelihood of occurrence. *See Imminent*, A Dictionary of Modern Legal Usage 419 (1st ed. 1987) ("*Imminent* means 'certain and very near, impending,' as in the legal phrase[] *imminent bodily harm* . . . .").

- 10 -

However, we reject Rimmel's view that this "reasonable probability" standard requires the State to prove that death or serious bodily injury was more likely than not to occur. In other contexts where we employ a reasonable probability standard, we have required something less than a "more likely than not" showing. *State v. Edgin*, 902 S.W.2d 387, 390 (Tenn. 1995) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)) (explaining what reasonable probability is in the context of the materiality standard for *Brady* material).

We also reject Rimmel's suggestion that the State must present expert testimony to prove the reasonable probability of harm. Although expert testimony might prove useful in some cases, we agree with the State that, in most cases, the jury can rely on its own common sense and reasonable inferences to evaluate the probability of harm.

To convict Rimmel of felony reckless endangerment with a handgun, then, the State had to prove that he (1) recklessly engaged in conduct that (2) created a reasonable probability that Burke would die or sustain serious bodily injury and that (3) he committed the offense with a handgun.

Viewing the evidence in the light most favorable to the State, we conclude that no rational juror could find that Rimmel's handgun-related conduct created a reasonable probability that Burke would be killed or sustain serious bodily injury. Although the gun was loaded and operable, Rimmel never fired the gun and there is no evidence that he pointed the barrel at Burke or in her general direction. Rimmel testified that he used the slide of the gun—not the barrel—to break the window. No evidence contradicts this testimony. Law enforcement officials at the scene determined that the handgun's slide no longer worked as it should and did not notice any damage to the barrel. And Burke did not see the gun because she kept her eyes fixed straight ahead.

Those facts distinguish this case from the precedents on which the State relies. The State cites *United States v. Ruiz-Lopez*, but that case—and the Tennessee cases it cited— involved a defendant who "point[ed] a loaded gun at another person." 53 F.4th 400, 403 (6th Cir. 2022); *see also State v. Bengtson*, No. E1999-01190-CCA-R3-CD, 2000 WL 1456926, at *3–4 (Tenn. Crim. App. Oct. 2, 2000) (affirming felony reckless endangerment conviction of defendant who "confronted [his victims] with a shotgun, angrily, aggressively, demanding and threatening" and pointed the weapon at them); *State v. Spraggins*, No. W2009-01073-CCA-R3-CD, 2010 WL 1839303, at *6 (Tenn. Crim. App. May 7, 2010) (affirming felony reckless endangerment conviction of defendant who "pulled a gun out from under the seat of his vehicle, pointed it directly at the victim, and announced that he was going to kill her"). *United States v. Suggs* is more analogous to the facts here, but the defendant there "possessed a loaded firearm, cocked it, [and] assaulted [the victim] while holding the firearm." 423 Fed. Appx. 501, 505 (6th Cir. 2011). There is no evidence here that Rimmel cocked his handgun before using it to break Burke's window.

- 11 -

The Kentucky Supreme Court's decision in *Kelly v. Commonwealth* is more on point. 655 S.W.3d 154, 160–61 (Ky. 2022). There, the defendant was "waving [his handgun] around in [a] manner that increased the probability that discharge may occur." *Id.* at 160.

The State argues that the jury could infer a reasonable probability of serious injury based on its "common sense" understanding that hitting the slide of a loaded handgun against a window increased the probability that it would accidentally discharge. The State is right that we "presume that jurors apply their common sense to the evidence before them." *State v. Vance*, 596 S.W.3d 229, 256 (Tenn. 2020). A rational juror may have been able to conclude, based on his or her common sense, that slamming the slide of a handgun against a window would create a reasonable probability that the gun would misfire.

But even if it were reasonably probable that the handgun would accidentally discharge, we are unpersuaded that a rational juror could conclude that there was also a reasonable probability that Burke would be shot—i.e., that she was in the zone of danger. That's because there is no evidence that Rimmel ever pointed the barrel of the gun at Burke or in her general direction. As Rimmel observes, the Court of Criminal Appeals has routinely held that evidence is insufficient to establish felony reckless endangerment in cases where a defendant fires a weapon away from a person. *See State v. Buford*, No. E2004-01780-CCA-R3-CD, 2005 WL 1488578, at *4 (Tenn. Crim. App. June 23, 2005) (risk of injury was mere possibility when the defendant fired his gun "into the air" and "away from both the street and any buildings in the vicinity that could have been occupied"); *State v. Baldwin*, No. 01C01-9612-CR-00530, 1998 WL 426199, at *4 (Tenn. Crim. App. July 29, 1998) (possibility that "the bullet could have ricocheted off one of the metal appliances" to strike a bystander was insufficient to prove imminent danger); *State v. Fox*, 947 S.W.2d 865, 866 (Tenn. Crim. App. 1996) (risk of injury was not reasonably probable when the defendant "discharge[d] [his] weapon into the air or up into a tree top").

By contrast, the Court of Criminal Appeals has affirmed felony reckless endangerment convictions when the defendant pointed or fired a handgun in the general direction of the victim, thereby placing the victim in the zone of danger. *See, e.g.*, *State v. Alder*, 71 S.W.3d 299, 304–05 (Tenn. Crim. App. 2001) (affirming felony reckless endangerment conviction where the victim was "a few feet away" from the defendant's intended target and "in the line of [the] [d]efendant's fire"); *State v. Self*, No. 03C01-9807-CR-002, 1999 WL 553093, at *2 (Tenn. Crim. App. July 30, 1999) (affirming felony reckless endangerment conviction where the victim was "fifteen to twenty feet" from the defendant's target and the defendant fired his weapon "at night and from across the street"). Although the evidence here establishes that Rimmel was only a few feet away from Burke as he attempted to break her car window, there is no evidence that the barrel of the gun was ever pointed at her or in her general direction. These facts distinguish this case from *Kelly*.

In that case, the court found that the victim "was within the immediate area within which [the defendant's] conduct" created a probability of serious injury. 655 S.W.3d at 161.

We affirmed a felony reckless endangerment conviction involving a loaded firearm in *State v. Goodwin*, 143 S.W.3d 771 (Tenn. 2004), but that case is of limited relevance here because of its unique facts. While fleeing from the police, the defendant in *Goodwin* left a loaded and cocked shotgun in the woods "a mere fifty feet behind" houses where the defendant had seen children playing. *Id.* at 777. A couple of weeks later, children who were playing in the woods found the gun. *Id.* at 775. The gun discharged when it was dropped on the ground, killing one child and seriously injuring another. *Id. Goodwin* "present[ed] a unique circumstance in that the zone of danger created by the defendant continued beyond the time of his actual action." *Id.* at 778. Because the defendant's action "created a lasting danger that continued for the entire time that the gun lay in the woods in its precarious state," we concluded that children who later happened upon the gun were in the zone of danger and affirmed the reckless endangerment conviction on that basis. *Id.*

*Goodwin* does not help the State here because Rimmel's conduct did not create any similar "lasting danger." Rather, the danger Rimmel created was "transitory" and ended when Rimmel's conduct ceased. *Id.* When, as here, the danger is transitory, "[t]he zone of danger . . . relates solely to the proximity of the victim to the danger." *Id.* As explained above, Rimmel's conduct did not place Burke in the zone of danger because the barrel of his gun was never aimed in her general direction.

Given our conclusion that the evidence was insufficient to support Rimmel's conviction for felony reckless endangerment with a handgun, we reverse the conviction and dismiss the underlying indictment. Tennessee's appellate courts "have authority to order a reduction in degree of the offense for which defendants were convicted when the evidence does not support the higher crime and does support the lesser included offense." *Bandy v. State*, 575 S.W.2d 278, 281 (Tenn. 1979). But we decline to exercise that authority here because whether the evidence was sufficient for the lesser included offense of misdemeanor reckless endangerment is a close question. To convict the defendant of that offense, the State must prove that Rimmel "recklessly engage[d] in conduct that places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). Because Rimmel was acquitted of reckless endangerment with a motorcycle, the State would have to rely on conduct *other than* his use of the handgun and the motorcycle to convict him of misdemeanor reckless endangerment. The only remaining conduct that could arguably suffice is when Rimmel punched and kicked Burke's car window. The existing record evidence does not show that this conduct created a reasonable probability of death or serious bodily injury. Therefore, we remand to the trial court for resentencing.

**CONCLUSION**

We affirm Rimmel's conviction for attempted aggravated assault because we conclude that the evidence presented at trial was sufficient to support that conviction. We reverse Rimmel's conviction for felony reckless endangerment with a handgun, however, because that conviction was not supported by sufficient evidence. We dismiss that indictment and remand for further proceedings.

_____
SARAH K. CAMPBELL, JUSTICE